STATE of Iowa, Appellee,

v.

George William HALL, Appellant.

No. 85–976.

Supreme Court of Iowa.

Nov. 12, 1986.

Charles L. Harrington, Appellate Defender, and B. John Burns, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Elizabeth E. Ciebell, Asst. Atty. Gen., Michael P. Short, Lee Co. Atty., and Gordon Liles, Asst. Lee Co. Atty., for appellee.

Considered by HARRIS, P.J., and Mc-GIVERIN, WOLLE, LAVORATO, and NEUMAN, JJ.

McGIVERIN, Justice.

Defendant George William Hall was found guilty by a jury of first degree murder in violation of Iowa Code sections 690.-1-.2 (1977). Hall, on appeal, asserts that the seven year delay between the death of the victim and the filing of charges against Hall constituted a denial of his right to due process. We affirm the judgment of the trial court.

James Varner was murdered and his body recovered from the Des Moines River near Keokuk on Sunday, May 29, 1977. An investigation was started but charges were not filed against defendant until 1984. On October 9, 1984, Michael Edward Burrows, James Edward Florie, and defendant were charged in Lee County by trial information, Iowa Rule of Criminal Procedure 5(1), with murder in the first degree. An amended trial information charged this murder was in violation of Iowa Code sections 690.1–.2 (1977). The State's theory was that Burrows hired Hall and Florie to kill Varner.

Defendant filed a motion for severance of the trials of the three codefendants. Iowa R.Crim.P. 10(2)(e). The motion was granted and Hall's case proceeded to trial. On February 12, 1985, a mistrial was declared in Hall's case. *See* Iowa R.Crim.P. 18(6)(a).

On April 17, Hall's motion for change of venue, Iowa Rule of Criminal Procedure 10(2)(f), was granted and his case was transferred to Jefferson County for retrial. The jury returned a verdict of guilty on Hall's first degree murder charge. Iowa R.Crim.P. 21(1). Judgment was entered on

the verdict and sentence was pronounced. *See* Iowa Code § 690.2.

Defendant appeals, contending that the delay of over seven years between the date of Varner's death and the filing of charges against Hall constituted a denial of his right to due process under the fifth and fourteenth amendments to the United States Constitution. This argument was sufficiently raised before the trial court, in defendant's motion to dismiss preceding the second trial, to preserve it for our review.

I. *Preaccusatorial delay and due process.* Hall states that the seven year delay in bringing charges against him for the murder of James Varner constitutes preaccusatorial delay. He asserts this delay prejudiced his due process rights under the United States Constitution.

■ We have recognized a defendant's right to challenge preaccusatorial delay on constitutional grounds. A defendant not only has the guarantee of the statute of limitations, if applicable, in challenging a delay in indictment, but also has the guarantee of the fifth amendment due process protections as applied through the fourteenth amendment as a ground for his challenge. *State v. Sunclades,* 305 N.W.2d 491, 494 (Iowa 1981). To prove a fourteenth amendment challenge, the defendant must show (1) that the delay was unreasonable and, (2) as a result of the delay, the defendant was actually prejudiced in his defense. *State v. Williams,* 264 N.W.2d 779, 783 (Iowa 1978); *see United States v. Lovasco,* 431 U.S. 783, 789–90, 97 S.Ct. 2044, 2048–49, 52 L.Ed.2d 752, 759 (1977).

A. *Reasonableness of delay.* The State offers numerous reasons for its delay in bringing charges against Hall. The State contends that Hall was not available for investigative purposes from September 1977 to early 1984. It appears from the record Hall and his wife left the Quincy, Illinois area in September 1977. They relocated in Des Moines, where Hall began to receive government checks and where he obtained employment. The State administratively closed the Varner murder investigation in August 1978.

The State received information regarding Hall's location in 1982, but did not follow up this lead until 1984. At that later date, Hall was located and interviewed by the Iowa division of criminal investigation (DCI). Hall asserts that the State did not attempt to locate him, thus it intentionally delayed bringing charges against him.

The State also justifies its delay on the basis of changes in personnel in both the DCI and attorney general's offices. No less than three DCI agents and four assistant attorneys general were in charge of the case at one time or another. Hall asserts that regardless of personnel changes the investigation was virtually completed in January 1978. Failure to bring charges at that time, he argues, prejudiced his due process rights.

Most importantly, the State explained its delay by referring to the reason for the dismissal of a related case. In the fall of 1977, charges were filed against James Florie for the murder of Varner. As the case neared trial, William Smith, a key State witness, changed his story. Smith had initially stated facts to police investigators implicating Florie, Hall and Michael Burrows in the murder. He then repudiated those statements. On the basis of his change in testimony, the State dismissed the charges against Florie with court approval. Iowa Code § 795.5 (1977).

■ At Hall's second trial in 1985, it was clear that Smith adhered to his initial 1977 statements incriminating Burrows, Hall and Florie. The change in the testimony of a material witness such as Smith justified the delay in bringing charges against Hall. The State was uncertain of the likelihood of a conviction of any of the codefendants without the testimony of Smith. *See Stoner v. Graddick,* 751 F.2d 1535, 1543 (11th Cir.1985) (19 year delay justified because the state did not believe the evidence would support a conviction when it completed its investigation in 1958). The decision to delay prosecution of Hall until further evi-

dence was found was clearly within the discretion of the prosecutor. *State v. Schlick,* 257 N.W.2d 59, 61 (Iowa 1977). The prosecutor promptly reopened the case in 1984 when information was received from Terry Snider, an inmate at the Adams County, Illinois jail. An interview and apparent new change of story by Smith followed.

The constitutional protection of due process is guaranteed to defendants to assure the state will not employ tricks to gain an advantage over a defendant. *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468, 481–82 (1971); *State v. Burrell,* 255 N.W.2d 119, 122 (Iowa 1977). There was no evidence in this case that the State delayed in order to gain a tactical advantage over Hall. We will not presume impropriety or bad faith on the part of the State in its delay in bringing charges. *State v. Sunclades,* 305 N.W.2d at 495.

Based on the changes in Smith's testimony and the State's response to new leads concerning the Varner murder, we conclude the seven year delay by the State in bringing charges against Hall was both reasonable and justified; therefore Hall failed to show the delay was unreasonable.

■ B. *Actual prejudice caused by delay.* "Where the possibility of prejudice derives from pre-indictment delay, the defendant in a criminal case must first resort to the applicable statute of limitations." *Stoner v. Graddick,* 751 F.2d at 1541 (citing *United States v. Marion,* 404 U.S. at 323, 92 S.Ct. at 464, 30 L.Ed.2d at 480). Where the statute of limitations does not offer relief, the defendant may then raise fourteenth amendment claims. *Id.*

There is no statute of limitations on a murder charge in Iowa. Iowa Code § 752.1 (1977). Therefore, Hall must raise fourteenth amendment arguments to prove the prejudice of any preaccusatorial delay.

■ In a claim of preaccusatorial delay, defendant must show more than mere general claims of prejudice to prevail. Actual prejudice must be both alleged and proved.

*State v. Williams,* 264 N.W.2d at 783. If the defendant is asserting witnesses are missing as a result of the delay, he must show the witness would have provided material evidence for the defense. *State v. Herndon,* 257 N.W.2d 19, 21 (Iowa 1977); *State v. Burrell,* 255 N.W.2d at 122; *see United States v. Corbin,* 734 F.2d 643, 648 (11th Cir.1984) (Absent witnesses must be listed with an indication of the substance of their testimony and of the availability of the testimony through others.).

■ On appeal, Hall argues he was prejudiced by the absence of three witnesses and the unavailability of one piece of evidence. The first absent witness was Chief Deputy Jack Morgan from the Lee County sheriff's department. He was present at the bank of the Des Moines River when Varner's body was recovered. He then accompanied the DCI agents to the autopsy. He died before the trial commenced in this action. Hall failed to show how Morgan would have provided material evidence in his defense; thus, we conclude Hall's defense was not actually prejudiced by Morgan's absence.

Deputy Bob Marlin was another witness who died prior to Hall's trial. Marlin also had been present at the riverbank while the body of Varner was being recovered. Hall alleges that Marlin photographed, and possibly measured, the footprints on the bank before DCI agents arrived. There was competent evidence introduced at trial depicting the footprints and specifying their dimensions. Additionally, other officers present at the scene could not remember Marlin doing anything more than photographing the footprints. Defendant argues that Marlin would have been able to give a more accurate description of the footprints in the expandable soil because he was present at an earlier time. Due to the limited role Marlin took in gathering evidence at the crime scene and the availability of specific measurement testimony through other witnesses, we conclude Marlin would not have provided material testimony for Hall. Therefore, we cannot say

Hall was actually prejudiced by Marlin's absence.

The third witness who died during the seven year delay was Martha Martin. Defendant alleges Martin was present when Michael Burrows allegedly offered to pay Hall to kill James Varner. There is considerable dispute in the testimony about whether Martin was even present at the time the conversation allegedly took place. The two individuals who were present during the conversation and who were not charged with the murder could not remember her presence during the conversation. Only Hall contends she was present. Hall failed to establish that Martin was present at the time the conversation took place and failed to specify in what way she would provide material evidence for his defense. Hall, therefore, was not actually prejudiced by the absence of Martin's testimony.

Defendant's final contention is that he was prejudiced by the unavailability of FCC reports concerning a television news broadcast on May 29, 1977. He claims the FCC records may have shown the news broadcast had been preempted by a sports program, thus impeaching testimony by William Smith. Smith testified for the State to the effect that he, Hall and Florie had watched the five o'clock WGEM news that day. When the Varner murder story came on, Florie allegedly got excited and began to panic. Smith testified that Hall told Florie to settle down or he would get caught.

The State also called Maggie Thomas, the WGEM reporter who had covered the story, as a witness. She testified the story she taped would have aired on the five o'clock news unless the broadcast was preempted by a sportscast; however, she could not recall if the news had been preempted. The local television program guides, introduced as evidence, failed to show any sportscast on WGEM that afternoon. Therefore, it would seem no preemption of the newscast was possible.

Defendant asserts that he was prejudiced because he could have obtained copies of FCC reports on preemption within two years following the date of the questioned broadcast. Since that time, however, the reports have been destroyed. There was little, if any, evidence disputing the fact the five o'clock news was broadcast as scheduled on May 29, 1977. Defendant has not shown the "materiality" of the FCC preemption reports. We conclude Hall has not established actual prejudice with respect to the absence of the FCC reports.

II. *Disposition.* Hall failed to establish the two conditions for preaccusatorial delay set forth in *State v. Williams,* 264 N.W.2d at 783. Therefore, we affirm the trial court's judgment on Hall's first degree murder conviction.

AFFIRMED.