STATE of Iowa, Appellee,

v.

Everett Ray WAGNER, Appellant.

No. 85–271.

Supreme Court of Iowa.

July 22, 1987.

James P. Cleary, Phoenix, Ariz., for appellant.

Thomas J. Miller, Atty. Gen., Elizabeth E. Ciebell and Bruce Kempkes, Asst. Attys. Gen., for appellee.

Considered by REYNOLDSON, C.J., and McGIVERIN, CARTER, WOLLE, and NEUMAN, JJ.

REYNOLDSON, Chief Justice.

Following a jury trial defendant Everett Ray Wagner has appealed from a district court judgment convicting him of eight counts of second-degree kidnapping and one count of insurrection. Except with respect to a restitution question, the issues Wagner raises are meritless. We affirm in part, reverse in part, and remand for further proceedings.

Wagner's appeal arises out of a major uprising at the Iowa State Penitentiary on September 2, 1981. Inmates took a number of penitentiary employees hostage and caused substantial property damage to the penitentiary.

In the course of the disturbance, Wagner was the principal actor in the forced detention of eight guard trainees. All but one of these guards were held hostage from approximately 11 a.m. until about 9:20 p.m. During that period, the hostages were moved throughout the penitentiary by armed and antagonistic inmates, frisked and robbed, forced to wear prison garb, and used as bargaining chips by the rioting inmates Wagner led.

Approximately twenty months later the State, by trial information, charged Wagner with eight counts of second-degree kidnapping in violation of Iowa Code sections 710.1, 710.3, and 703.1 (1981), and one count of insurrection in violation of Iowa Code sections 718.1 and 703.1 (1981). For purposes of future sentencing, Wagner was further accused of being an habitual offender. *See* Iowa Code § 902.8 (1981). Following numerous delays, Wagner was tried and convicted on all nine counts. Trial court entered judgment, imposed sentence, and ordered restitution.

Appealing, Wagner contends a number of trial court errors mandate reversal of his conviction.[1]

---

1. Wagner raises no claims concerning his prison sentence or status as an habitual offender.

Thus, we do not address these aspects of Wagner's conviction.

## I. *Preaccusatorial delay and change of venue.*

Wagner contends the State's twenty-month delay in instituting charges against him violates both his right to due process and his right to a speedy trial.

■ The sixth amendment right to speedy trial attaches only after the State brings actual charges. *United States v. MacDonald*, 456 U.S. 1, 6–7, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696, 702–03 (1982). Here, Wagner knowingly and willingly waived that right following the filing of the trial information. Thus his speedy trial contention is without merit.

■ Turning to Wagner's due process claim,[2] he must prove (1) the delay was unreasonable *and* (2) because of the delay his ability to present his defense actually was prejudiced. *State v. Hall*, 395 N.W.2d 640, 642 (Iowa 1986); *State v. Williams*, 264 N.W.2d 779, 783 (Iowa 1978). Wagner cannot prevail on this issue unless he has proved his right to a fair trial was substantially prejudiced as a result of the State's intentional attempt to gain a tactical advantage by delaying the initiation of charges. *State v. Cuevas*, 282 N.W.2d 74, 77 (Iowa 1979); *see also Hall*, 395 N.W.2d at ·643; *State v. Sunclades*, 305 N.W.2d 491, 494 (Iowa 1981).

■ Reviewing the record de novo, we conclude Wagner has established neither of these requirements. Nothing in the record suggests the twenty-month delay was intended to gain a tactical advantage against Wagner. Rather, the record reflects the State's resources were concentrated on a large number of murder prosecutions arising out of the prison uprising, and it simply was unable to devote attention to Wagner at an earlier date.

Moreover, Wagner has failed to prove his right to a fair trial was substantially prejudiced by the delay. While he claims this delay caused a number of persons to become unavailable as witnesses, he has made no showing these persons could have supplied material evidence not otherwise available to him. *See State v. Herndon*, 257 N.W.2d 19, 21 (Iowa 1977). Wagner's additional claims of prejudice, including a challenge to the State's action in repairing the extensive damage done to the penitentiary, are equally unsupported and we reject them.

We also find no merit in Wagner's assertion trial court committed reversible error when it refused his request for change of venue. This claim, which implicates Wagner's due process right to a fair trial, we review de novo. Reversal is required only when trial court has abused its discretion. *State v. Spargo*, 364 N.W.2d 203, 207 (Iowa 1985).

When confronted with a change of venue motion, trial court must determine whether "such degree of prejudice exists in the county in which the trial is to be had that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county." Iowa R.Crim.P. 10(10)(b). We have held that to secure a reversal on this ground a defendant " 'must show either actual prejudice on the part of the jury or must show that the publicity attending the case was so pervasive and inflammatory that prejudice must be presumed.' " *State v. Wilson*, 406 N.W.2d 442, 445 (Iowa 1987) (quoting *State v. Robinson*, 389 N.W.2d 401, 403 (Iowa 1986)); *State v. Gavin*, 360 N.W.2d 817, 819 (Iowa 1985). Wagner made no attempt to show the jury in his trial actually was prejudiced against him. We therefore examine the publicity surrounding Wagner's trial to determine whether it was so pervasive and inflammatory as to create a presumption of prejudice.

■ Seeking to meet this requirement, Wagner offered a large number of newspaper articles dealing with the September 2 uprising, and the results of a telephone survey intended to demonstrate the community was biased against penitentiary in-

---

**2.** Wagner of course cannot rely on the statute of limitations. Iowa Code § 802.3 provides that an indictment or information for a felony (except murder or sexual abuse) or aggravated or seri- ous misdemeanor shall be found within three years after its commission. Iowa Code § 802.3 (1981).

mates in general. After reviewing the newspaper articles, we conclude they were on the whole objective, factual reports that expressed no view on Wagner's guilt or innocence. Further, Wagner points to nothing in the articles that is inaccurate, misleading, or obviously intended to inflame the public against him.

Exposure to newsworthy events will not alone give rise to a presumption of prejudice. Additionally, to the extent particular jurors may be substantially prejudiced against a defendant, rigorous voir dire can be trusted to expose these prejudices. *State v. Ware,* 338 N.W.2d 707, 713 (Iowa 1983); *State v. Chadwick,* 328 N.W.2d 913, 916 (Iowa 1983).

Wagner also has made no showing the two-year period between the publicity relating to the uprising and trial was insufficient to dissipate any prejudice that might have been created by adverse publicity. *See Wilson,* 406 N.W.2d at 446; *State v. Johnson,* 318 N.W.2d 417, 423 (Iowa), *cert. denied,* 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982); *State v. Cornelius,* 293 N.W.2d 267, 269 (Iowa 1980).

Focusing on the results of Wagner's telephone survey, we conclude they fall short of demonstrating a substantial likelihood a fair and impartial jury could not be impaneled in Lee County. To the contrary the survey, taken as a whole, shows that despite a heavy saturation of penitentiary-related news reports inmates at the Iowa State Penitentiary, including Wagner, reasonably could expect a fair trial in Lee County.

Trial court committed no abuse of discretion in rejecting Wagner's motion for change of venue.

II. *The State's failure to call all the hostages as witnesses.*

Wagner next asserts several issues grounded on the State's decision to call as witnesses only three of the eight guards taken hostage during the uprising. The reason behind the State's decision to limit the record is evident. All eight hostages, with the exception of one who was released separately because of heart problems, were treated similarly by the inmates. To utilize the testimony of all eight would have been cumulative in nature.

Wagner first contends that because five guards did not testify there was no substantial evidence in the record from which the jury could find these guards did not consent to being taken hostage. *See* Iowa Code § 710.1 (1981). We reject this argument.

In Iowa, circumstantial evidence is as probative as direct evidence. *State v. Doss,* 355 N.W.2d 874, 878 (Iowa 1984). If under all the evidence, both circumstantial and direct, the jury reasonably could conclude the State established the element of nonconsent beyond a reasonable doubt, substantial evidence of guilt exists and we are bound by the jury's verdict. *See State v. Blair,* 347 N.W.2d 416, 419 (Iowa 1984).

■ Here, although five hostages did not give direct testimony of nonconsent, the undisputed evidence shows these non-testifying hostages were treated like the hostages who did present evidence. According to Wagner's own testimony, the eight hostages were never free to leave during the uprising. We conclude this evidence was sufficient to permit the jury reasonably to find all the guards had not consented to being held hostage by the inmates.

Wagner next asserts the State's failure to call five of the hostages justified an instruction that the jury might draw an inference the non-testifying hostages would have presented testimony adverse to the State's case. Trial court rejected Wagner's requested instruction.

■ To be entitled to an instruction allowing a negative inference to be drawn from the State's failure to call a witness, there must be some factual basis in the record independent of the failure itself that would tend to support such an inference. *State v. Langlet,* 283 N.W.2d 330, 335 (Iowa 1979). This rule simply mirrors the well-established principle trial court should submit to the jury only those issues supported by substantial evidence, and it is error to submit an issue having no support

in the record. *Hoekstra v. Farm Bureau Mut. Ins. Co.*, 382 N.W.2d 100, 107 (Iowa 1986). No inferences will be supported when the witness is equally available to both sides or when the testimony that could be elicited would be cumulative in nature. *Prestype, Inc. v. Carr*, 248 N.W.2d 111, 120 (Iowa 1976).

■ Here, the record contains nothing to suggest the five non-testifying hostages would have given testimony adverse to the State's case. The possibility they would have testified adversely to the State is purely speculative. We hold trial court properly rejected Wagner's request for an instruction allowing a negative inference to be drawn.

Wagner next attacks trial court's denial of his motion to sever and his motion in limine. By pretrial motion Wagner sought severance of the five counts of kidnapping for which the State did not intend to call the victims. He then sought, by motion in limine, to exclude all State testimony relating to the thoughts, mental impressions, or nonconsent of the non-testifying hostages.

■ Trial court properly rejected Wagner's motion to sever because it was untimely. Absent a showing of good cause, motions to sever counts must be filed no later than forty days after arraignment. Iowa R.Crim.P. 10(4). Wagner was arraigned May 10, 1983. He did not file his motion to sever until October 25, 1984. He made no attempt to demonstrate good cause for his failure to file the motion within the required time. Thus, Wagner's right to file a motion to sever was waived. Iowa R.Crim.P. 10(3).

Even absent waiver, Wagner was not entitled to a severance. Rule 6 of the Iowa Rules of Criminal Procedure allows multiple counts to be prosecuted together when the counts arise out of "the same transaction or occurrence." Iowa R.Crim.P. 6(1). Applying this test, we have ruled that joinder should occur when in light of the time, place, and circumstances " 'the facts of

each charge can be explained adequately only by drawing upon the facts of the other charge.' " *State v. Bair*, 362 N.W.2d 509, 512 (Iowa 1985) (quoting *State v. Boyd*, 271 Or. 558, 566, 533 P.2d 795, 799 (1975)). A criminal defendant, of course, may in all cases attempt to prove that joinder, even if otherwise permissible, will in some way prejudice his or her right to a fair trial. *See* Iowa R.Crim.P. 6(1).

■ Here, the eight alleged kidnappings occurred at the same time, in the same place, and under identical circumstances. As a result, the facts supporting each of the eight kidnapping counts necessarily overlap and involve details central to each of the other counts. Joinder therefore was permissible. Further, Wagner has presented no evidence to support his claim that failure to sever would prejudice his right to a fair trial. Nothing in this record suggests Wagner's relationship with the non-testifying hostages was any less antagonistic than with those who testified.

Trial court likewise properly denied Wagner's motion in limine. Ordinarily, the State has the right to present evidence concerning all the facts and circumstances surrounding the commission of the crime. That this showing may necessarily include evidence of other crimes or unfavorable circumstances does not render the evidence inadmissible. *State v. Drake*, 219 N.W.2d 492, 494 (Iowa 1974); *see also State v. Duncan*, 312 N.W.2d 519, 522 (Iowa 1981).

Wagner finally asserts the State's failure to present five of the kidnapping victims stripped him of his sixth amendment confrontation right. We disagree.

In *State v. Coy*, 397 N.W.2d 730 (Iowa 1986), we recently reiterated the important function served by the right of confrontation. We note here that Wagner was allowed to cross-examine all witnesses against him, in the presence of the jury, while these witnesses were under oath. *Id.* at 733–34.[3] Thus, as traditionally under-

---

**3.** Ordinarily an individual is considered to be a witness "against" a defendant for sixth amendment confrontation clause purposes only "if his [or her] testimony is part of the body of evi-

dence that the jury may consider in assessing his [or her] guilt." *Cruz v. New York,* —— U.S. ——, ——, 107 S.Ct. 1714, 1717, 95 L.Ed.2d 162, 169 (1987).

stood, Wagner's right of confrontation was satisfied.

Wagner asserts, however, that the confrontation right should be expanded to require the State to present as witnesses all individuals involved in the crime regardless of the relevancy of their testimony or its cumulative nature. As the Supreme Court in a similar situation stated, "this contention ... [is] absolutely devoid of merit." *Cooper v. California,* 386 U.S. 58, 62 n. 2, 87 S.Ct. 788, 791 n. 2, 17 L.Ed.2d 730, 734 n. 2 (1967).

■ The right of confrontation guarantees a criminal defendant the right to face and cross-examine those who *testify* against him or her. *See Delaware v. Fensterer,* 474 U.S. 15, ——, 106 S.Ct. 292, 294, 88 L.Ed.2d 15, 18 (1985) (per curiam). It does not require the State to produce witnesses who do not testify at trial. *Pennsylvania v. Ritchie,* —— U.S. ——, ——, 107 S.Ct. 989, 1000 n. 10, 94 L.Ed.2d 40, 55 n. 10 (1987) (plurality); *United States v. Morgan,* 757 F.2d 1074, 1076 (10th Cir. 1985). There was no violation of Wagner's confrontation right with respect to these non-testifying victims.

### III. *Compulsory process.*

Wagner next asserts trial court erred in refusing to allow his attorney to interview and depose a large number of individuals, including the five non-testifying hostages, the State did not list as witnesses on its trial information. Although trial court allowed Wagner to depose a number of individuals not listed as State witnesses, trial court refused to allow Wagner to depose the five non-testifying hostages or individuals located outside the state.

Discovery rulings are within trial court's sound discretion and we review them only for abuse of that discretion. *State v. Gates,* 306 N.W.2d 720, 725 (Iowa 1981). Error in administration of discovery rules is not reversible absent a demonstration that the substantial rights of the defendant were prejudiced. *State v. Grimme,* 338 N.W.2d 142, 146 (Iowa 1983); *State v. Webb,* 309 N.W.2d 404, 413 (Iowa 1981).

Although far from clear, it appears Wagner asserts trial court's action violated both his constitutional right to compulsory process and Iowa Rule of Criminal Procedure 12(2). We disagree.

■ To trigger the right of compulsory process, a defendant must make a plausible showing the testimony of the individual otherwise unavailable to the defendant was both material and favorable to his or her defense. *United States v. Valenzuela-Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193, 1202 (1982). This requirement is embodied in Iowa Rule of Criminal Procedure 12 which, although allowing a defendant to depose all witnesses listed by the State on its trial information, requires a defendant to establish the necessity for deposing other persons. A defendant who makes no showing the evidence hoped to be obtained will be material and favorable to his or her defense has no right to compulsory process and has failed to demonstrate "special circumstances" as required by rule 12(2).

Although Wagner lists a number of persons who witnessed the uprising, he points to nothing definitive in the record that suggests their testimony would be material or favorable to his defense. He has made no showing their testimony would not merely duplicate that of other witnesses. Further, Wagner makes no claim regarding any prejudice that resulted from the court's denial of discovery, nor is any prejudice apparent from this record.

■ We hold trial court committed no abuse of discretion when it limited Wagner's ability to depose persons not listed as State's witnesses.

### IV. *Justification based on defense of third party.*

Wagner alleges as error trial court's failure to instruct the jury on his claim his actions were motivated by a desire to protect the guard trainees. Wagner contends the evidence not only showed he was motivated to seize the guards by compulsion, a defense the jury was instructed on, but

also showed he acted as he did in order to protect the well-being of the guards.[4]

Wagner's initial defense was based upon a claim of compulsion. He testified he took the hostages because his life had been threatened by another inmate. Trial court instructed the jury on Wagner's compulsory defense. The jury rejected that defense.

■■■ In contrast with his compulsion defense, Wagner presented no evidence to support a claim he acted as he did out of concern for the guards' safety. The record reflects their greatest fear was of Wagner, armed with a gun and knife, and the inmates under his command. Although trial court should instruct on all issues supported by substantial evidence, it commits error when it instructs on issues having no substantial support in the record. *Hoekstra v. Farm Bureau Mut. Ins. Co.*, 382 N.W.2d 100, 107 (Iowa 1986). Because no substantial evidence of third-party defense was presented, no jury issue was generated. Trial court properly refused to submit the requested instruction.

### V. *Insurrection.*

Wagner challenges the sufficiency of the evidence to support his conviction on the insurrection count. He also asserts the insurrection statute is unconstitutionally vague.

■■■ In relevant part Iowa's insurrection statute provides:

> An insurrection is three or more persons acting in concert and using physical violence against persons or property, with the purpose of interfering with … the government of the state … or to prevent any executive … officer or body from performing its lawful function.

Iowa Code § 718.1 (1981). In view of the large number of individuals identified as involved in the uprising, Wagner's role as a ringleader, the violence done to the hostages and the penitentiary, and the unquestionable disruption of State activities caused by the uprising, Wagner's claim of insufficient evidence is meritless.

We turn to Wagner's contention that Iowa Code section 718.1 is unconstitutionally vague, despite our reservations whether this issue was timely raised.

Wagner attacks the phrase in section 718.1 providing that individuals charged with insurrection must have been "acting in concert" with two or more other persons. *See* Iowa Code § 718.1 (1981).[5] The rules for determining whether this phrase is unconstitutionally vague are well settled.

■■■ While due process requires that persons be informed as to what the State commands or forbids, a person challenging a criminal statute as unconstitutionally vague must demonstrate it is unconstitutional beyond a reasonable doubt. *Saadiq v. State*, 387 N.W.2d 315, 320 (Iowa 1986). To carry that burden, a defendant must prove either the challenged provision fails to give a person of ordinary intelligence fair notice of what is prohibited or the challenged provision provides no explicit standards for those who apply it and thus allows such individuals to determine arbitrarily the scope of the prohibition. *Id.* at 321–22.

A statute is not vague if the meaning of the words used and the standards they establish "can be fairly ascertained by reference to similar statutes, other judicial determinations, reference to common law, to the dictionary, or if the words themselves have a common and generally ac-

---

4. Wagner's contention is apparently based on Iowa Code § 704.3:
 > A person is justified in the use of reasonable force when he or she reasonably believes that such force is necessary to defend himself or herself or another from any imminent use of unlawful force.

 Iowa Code § 704.3 (1981).

5. The complete text of Iowa Code § 718.1 is as follows:
 > An insurrection is three or more persons acting in concert and using physical violence against persons or property, with the purpose of interfering with, disrupting, or destroying the government of the state or any subdivision thereof, or to prevent any executive, legislative, or judicial officer or body from performing its lawful functions. Participation in insurrection is a class "C" felony.

 Iowa Code § 718.1 (1981).

cepted meaning." *State v. Donner*, 243 N.W.2d 850, 853 (Iowa 1976).

 The term "concert" is defined in the dictionary as "to plan together"; "to make a plan for"; "to act in harmony or conjunction." *Webster's New Third International Dictionary* 470 (1976). The term "concert" also is explained as follows in *Black's Law Dictionary:* "A person is deemed to act in concert when he [or she] acts with another to bring about some preconceived result." *Black's Law Dictionary* 262 (5th ed. 1979). These definitions of "concert" mirror the ordinary usage and everyday meaning of the word.

Examining Iowa Code section 718.1 in light of the above principles demonstrates the phrase "acting in concert" has a sufficiently defined meaning to give a person of ordinary intelligence fair warning of what is prohibited. Further, the same common, well-understood meaning provides standards sufficiently explicit to prevent the State from arbitrarily determining the scope of this statute. Accordingly, we conclude trial court rightly rejected Wagner's constitutional challenge to Iowa Code section 718.1.

## VI. *Ineffective assistance of counsel and fair trial.*

Wagner raises a myriad of alleged instances of ineffective assistance of counsel and denial of a fair trial. Clearly, the most unusual issue involves the testimony of Michael Gavin, a hostile defense witness who at one point in his testimony vomited on defense counsel. Gavin's testimony was considered by the jury and neither Wagner nor the State made any claim his actions or his subsequent unavailability adversely impacted their right to present their cases.

 Wagner asserts Gavin's actions and the unusual circumstances surrounding them denied him the right to a fair trial. Because this contention is asserted for the first time on appeal and was never considered by trial court, it is waived. *Patchette v. State*, 374 N.W.2d 397, 401 (Iowa 1985). Regardless, Wagner points to nothing in the record to suggest the jury was turned against him by Gavin's actions, or that his defense was prejudiced in any way.

Wagner's alleged instances of ineffective assistance include trial counsel's failure to call particular witnesses, counsel's failure to seek the disqualification of the State prosecutor, and trial counsel's failure to strike for cause one particular juror. Wagner concedes there is nothing in this record to support his contentions but asks us to preserve them for postconviction review. We decline to do so.

 To preserve claims of ineffective assistance of counsel for postconviction review, a defendant must make some minimal showing from which this court can assess the potential viability of his or her claim. *State v. White*, 337 N.W.2d 517, 519 (Iowa 1983). Such a showing should not only demonstrate some need for further development of the record, but should indicate why the challenged actions are believed to have been ineffective and what prejudice is likely to have resulted from them. The bald assertion that certain acts constitute ineffective assistance of counsel will be insufficient to preserve the question for postconviction proceedings. *Id.*

Here, Wagner has made no attempt to demonstrate why further proceedings are necessary or what he hopes to establish by them. He provides no definitive instances of possible prejudice flowing from counsel's challenged actions. We conclude Wagner has raised no viable claim of ineffective assistance here, and find no basis for preserving these issues for postconviction review.

## VII. *Contentions relating to restitution.*

Wagner asserts trial court imposed restitution without allowing him any opportunity to challenge the restitution plan it approved.

At the sentencing hearing trial court ruled that the director of adult corrections should prepare a plan of restitution to be submitted to the court for its approval. A plan later was submitted to and approved by the court that required Wagner to pay $1,300,000 in pecuniary damages, $1941.06

in court costs, and $46,500 in attorney and witness fees.

The State concedes Wagner has had no opportunity to contest this plan of restitution. This opportunity should be provided. *See* Iowa Code § 910.7 (1983); *State v. Kaelin,* 362 N.W.2d 526, 528 (Iowa 1985); *State v. Janz,* 358 N.W.2d 547, 548–49 (Iowa 1984); *State v. Storrs,* 351 N.W.2d 520, 522 (Iowa 1984).

We therefore reverse the district court judgment with respect to the restitution plan order only, and remand to permit Wagner an opportunity to be heard regarding the plan of restitution approved by the court. Wagner's convictions on all counts are affirmed. Costs of this appeal are taxed to Wagner.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.