# IN THE COURT OF APPEALS OF IOWA

No. 15-1369
Filed April 27, 2016

**JERRY TOLBERT,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Scott County, Paul L. Macek,

Judge.

Jerry Tolbert appeals the denial of his application for postconviction relief.

**AFFIRMED.**

Leah D. Patton, Walcott, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant

Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

Jerry Tolbert appeals the denial of his application for postconviction relief (PCR). He raises several claims of ineffective assistance of counsel. Having determined Tolbert has failed to show his counsel breached any essential duties that prejudiced him individually or cumulatively, we affirm.

## I. Background Facts and Proceedings.

In 2011, a jury found Tolbert guilty of first-degree robbery. The pertinent facts relating to that conviction are summarized as follows:

> On the evening of June 16, 2011, seventy-four-year-old Albert Stewart patronized a tavern in Davenport, Iowa. . . . Shortly before midnight, he walked home, and, as he approached his front door, he was attacked from behind. Stewart fell to the ground and at some point his glasses were knocked off his face. The attacker struck Stewart in the back of his head between six and eight times with an object while demanding money from Stewart. The attacker took Stewart's billfold, which had a dollar in it, and a black cloth coin bag from Stewart's front pocket containing about two dollars' worth of change. Stewart's lighter was also taken. After the attacker fled the scene, Stewart crawled into his house and called 911.
>
> Officers Janet Martin and Byron Grothus were only a few blocks away from Stewart's home when the 911 call came in. Due to misinformation, they were informed Stewart was seen a couple of blocks away from his house, and the officers headed that way. Officer Grothus observed a black male walking between the 400 and 500 blocks of Wilkes Avenue, and the officers stopped him, believing he was the victim; however, the man was identified to be Jerry Tolbert. Officer Martin observed that Tolbert was sweating and seemed out of breath, like he had been running. Officer Grothus also noticed Tolbert was sweating profusely and that Tolbert had a substance on his leg that appeared to be blood. Officer Grothus remained with Tolbert, and Officer Martin went to Stewart's home to collect evidence.
> . . . .
> . . . Officer Grothus patted Tolbert down and then placed him in the squad car. Tolbert told Officer Grothus he was coming from a friend's house in the area of Seventh and Wilkes Street, and he was going to a nearby convenience store. Officer Grothus found change in the pocket of Tolbert's shorts in the amount of $1.55.

Additionally, he observed that Tolbert's shoes, legs, and shirt had what he believed to be blood on them.

. . . .

Officers searched a two-block radius around Stewart's home. A single dollar bill was found one block north of where Officer Grothus first made contact with Tolbert, and Tolbert had been walking north to south when Officer Grothus saw him. Officers were unable to find the object with which Stewart was struck, as well as Stewart's black cloth coin bag and wallet. The officers did locate Stewart's glasses, keys, and lighter.

The spot on the front of Tolbert's shirt was tested and matched Stewart's DNA. A stain on Tolbert's right shoe was confirmed to be human blood, but no DNA profile was generated. Additionally, human blood was found on Tolbert's wallet and keys. No swabs were taken of the suspected blood on Tolbert's legs.

See State v. Tolbert, No. 12-0046, 2012 WL 5605277, at *1-2 (Iowa Ct. App. Nov. 15, 2012). This court affirmed Tolbert's conviction on direct appeal. See id. at *1. Tolbert now appeals the denial of the PCR application he filed in 2014.

## II. Ineffective Assistance of Trial Counsel.

We review ineffective-assistance-of-counsel claims de novo. See Everett v. State, 789 N.W.2d 151, 158 (Iowa 2010). To succeed, Tolbert must show his trial counsel failed to perform an essential duty and that he was prejudiced as a result. See id. In measuring counsel's performance, we use the standard of a reasonably competent practitioner. See id. To establish prejudice, Tolbert must show a reasonable probability that the outcome would have been different if his trial counsel had acted competently. See id.

### A. Failure to investigate.

Tolbert makes two claims concerning his trial counsel's deficient investigation. First, he claims counsel should have investigated his medical conditions because they would have provided an alternative explanation as to why he was sweating profusely on the night of the robbery rather than leading

the jury to speculate he was running from the scene of the crime. Second, Tolbert alleges his trial counsel failed to review the laboratory notes to see if "there was something in there that might be helpful to the client that was not reflected in the actual [Department of Criminal Investigation (DCI) DNA] report," which counsel testified was his typical routine. As a result, Tolbert claims counsel could not have made an informed decision about whether to call the DCI analyst as a witness.

Even assuming counsel breached an essential duty, Tolbert failed to introduce any evidence at the PCR hearing to confirm what evidence would have been discovered had proper investigation been made and how it would have changed the outcome of trial. Any claim of prejudice is speculative and insufficient to meet Tolbert's burden of proving by a preponderance of the evidence that the result of trial would have been different had counsel performed effectively. *See Strickland v. Washington,* 466 U.S. 668, 693 (1984) ("It is not enough for the [claimant] to show that the errors had some conceivable effect on the outcome of the proceeding."); *Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) (holding applicant's claims that counsel was ineffective in failing to investigate were too general where the applicant did not propose what an investigation would have revealed or how anything discovered would have affected the result below); *State v. Wagner*, 410 N.W.2d 207, 215 (Iowa 1987) (holding defendant must make "some minimal showing from which this court can assess the potential viability of [the] claim"). Accordingly, Tolbert's claims regarding counsel's failure to investigate his medical records and the author's notes of the laboratory report must fail.

**B. Waiver of speedy trial.**

Tolbert next claims his trial counsel was ineffective in failing to apprise him of the consequences of waiving his right to a speedy trial and in advising him to waive that right. His argument is premised on the fact that the DNA results linking the blood found on his shirt to the victim only became available after the speedy trial deadline had expired. Now, with the benefit of hindsight, Tolbert complains he was not adequately advised of his right to a speedy trial and the consequences of waiving it as well as the benefits of not waiving it.

Tolbert testified he was informed that his trial counsel "needed more time to prepare my case" and he agreed to sign the waiver of his right to a speedy trial in order to allow his counsel additional time to prepare. The decision to waive the right to a speedy trial in order to allow for more time to investigate and prepare for trial is a strategic decision this court will not second guess. *See State v. McPhillips*, 580 N.W.2d 748, 756 (Iowa 1998). While hindsight indicates this judgment call was wrong, it is "a far cry from qualifying as ineffective representation." *Cuevas v. State*, 415 N.W.2d 630, 633 (Iowa 1987). Accordingly, Tolbert has not met his burden of proving counsel was ineffective in advising him regarding the waiver of his right to a speedy trial.

**C. Misstatements of fact.**

Tolbert also claims counsel rendered ineffective assistance when he failed to object to misstatements of fact in the prosecutor's opening and closing statements. Specifically, he complains the prosecutor misrepresented the evidence concerning the money found on his person and the money taken from

Stewart. Tolbert complains of the following statement made by the prosecutor during opening argument:

> The officer noticed some things when they stopped Mr. Tolbert. They noticed that he had what appeared to be blood on him. They also noticed that [ly]ing near Mr. Tolbert was a one dollar bill. They also noticed that Mr. Tolbert had some change on him, nickels, dimes, and quarters. This matched what was taken from Mr. Stewart. They say he had a dollar bill in his wallet and change, nickels, dimes, and quarters.

He also complains of the following statement made by the prosecutor during closing argument:

> What was taken from [Stewart]? One one-dollar bill was taken. And what do we find near the defendant, the direction he was coming from, one one-dollar bill. And the defendant tells the officers that, hey, I did have a dollar bill. So [Stewart] is assaulted. Someone takes a one-dollar bill, and lo and behold, who do we find in possession of a single dollar bill? The defendant.
>     Not only that, what else did [Stewart] say that he was missing? He was missing change, quarters, nickels, dimes. And guess who has quarters, nickels, and dimes on him? The defendant. Not any other money. He doesn't have another one-dollar bill or a ten-dollar bill or two more one-dollar bills. The only money the defendant has on him is what [Stewart] is missing, that was stolen from [Stewart].

Tolbert argues these statements misstate the record, which shows two dollars in nickels, dimes, and quarters were taken from Stewart, while only one dollar and fifty-five cents in nickels, dimes, and quarters were found on Tolbert.

Tolbert's claim counsel was ineffective in failing to object to these statements fails. Tolbert mischaracterizes the prosecutor's statements. Stewart testified Tolbert took "*about* two dollars' worth of change and a dollar bill." (emphasis added). As we read the prosecutor's statements, it is apparent he was emphasizing that the types of currency, not the amount, Stewart had on his person—a one dollar bill and nickels, dimes, and quarters—were the same as

those found on or near Tolbert at the time of his arrest. Because the prosecutor did not misstate the record in opening and closing argument, counsel did not breach an essential duty in failing to object to these statements. See *Millam v. State*, 745 N.W.2d 719, 721-22 (Iowa 2008) (stating counsel has no duty to raise a meritless issue).

**D. Cumulative prejudice.**

Finally, Tolbert argues he was prejudiced by the cumulative effect of trial counsel's errors. Where multiple individual claims of ineffective assistance of counsel are raised, we must determine the cumulative prejudice of those individual claims in assessing whether the claimant was prejudiced. *See State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012). However, if the claimant fails to establish counsel breached a duty with regard to any of those individual claims, we do not consider that claim in assessing cumulative prejudice. *Id.*

Tolbert's claim of cumulative prejudice fails. We have determined Tolbert failed to show counsel breached a duty with regard to Tolbert's waiver of his speedy trial rights or counsel's failure to object during opening and closing statements. The remaining claims, which relate to Tolbert's failure to investigate, are too speculative to show prejudice. The cumulative prejudicial effect of counsel's failure to investigate has likewise not been shown.

**III. Conclusion.**

Tolbert has failed to meet his burden of proving ineffective assistance of trial counsel. Accordingly, we affirm the order denying his PCR application.

**AFFIRMED.**