# IN THE COURT OF APPEALS OF IOWA

No. 16-0395
Filed January 11, 2017

**LARRY TWIGG,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.

_____

Appeal from the Iowa District Court for Black Hawk County, Jon C. Fister,

Judge.

Larry Twigg appeals from the denial of his application for postconviction

relief from his five convictions of lascivious acts with a minor. **AFFIRMED.**

John C. Heinicke of Kragnes & Associates, P.C., Des Moines, for

appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney

General, for appellee State.

Considered by Potterfield, P.J., Bower, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**POTTERFIELD, Presiding Judge.**

Larry Twigg appeals from the district court's denial of his application for postconviction relief (PCR) stemming from his five convictions of lascivious acts with a minor, in violation of Iowa Code section 709.14 (2009). On appeal, Twigg maintains the district erred in failing to find his second trial counsel ineffective for not obtaining for use at trial an interview transcript or alternatively, in failing to find that his postconvictio- relief counsel was ineffective for not obtaining a copy of the transcript. Additionally, he contends the trial court erred in ruling his second trial counsel did not provide ineffective representation in presenting Twigg's defense his conduct was "weird behavior" rather than "sexual behavior." After careful consideration, we affirm the district court.

**I. Background Facts and Proceedings.**

Twigg worked as a high school teacher in Waterloo. Beginning in December 2009, Twigg invited a seventeen-year-old student to his home to work on some outstanding homework assignments. Twigg told the student he could either complete the assignments or play a video game. Twigg explained the student would receive credit for an assignment for every level the student beat on the video game; the student was required to remove an article of clothing for each level lost.

The student chose to play the video game. The student lost four levels and was wearing only boxer shorts when Twigg left the room momentarily. While he was alone, the student researched online how to beat the game. When Twigg later noticed the student's improved performance on the video game, the student

admitted to cheating. Twigg then informed the student he would have to return to Twigg's home at a later date.

The student returned to Twigg's home in January 2010, but the rules of the game had changed. During this interaction, if the student wished to avoid removing a piece of clothing, he could instead opt to complete an activity on a list provided by Twigg. The student played the video game and had to remove clothing. However, at some point, the student began selecting activities from the list. The first activity the student chose to complete was called "cold change." This required the student to go into Twigg's garage by himself to change into a different pair of boxers. The student also completed exercises wearing only a towel.

Although the student eventually earned enough credit for the assignments, he still owed Twigg money for a cell phone bill Twigg apparently had paid for the student. Twigg offered to let the student work off the debt by completing more activities on the list. The student described the remaining activities as:

> [S]ix boxers which . . . involve[d] me in only my boxers laying on the bed and receiving six spankings, three whoppers, which would involve me bending over the bed butt naked and getting three spankings. The snow angels, which basically involved me doing two snow angels in my boxers, one on my front and one on my back. And des[s]ert mix, which involved me getting into the bathtub and letting him pour pineapple sauce, chocolate sauce, eggs, flour, milk, and two different kinds of candy on me.

The student completed the activities before Twigg drove him home. The student eventually told a few friends, who in turn told the high school principal. The incidents were reported to the police.

During the investigation in January 2010, school administrators and police officers interviewed Twigg, who admitted to the incidents described by the student. Twigg explained he "thought this was a way to motivate the student to do better." He further apologized and said "this is a stupid thing I did. It was a mistake, and I am sorry." Twigg was arrested, and two other former students emerged with similar allegations against Twigg.

The State charged Twigg by trial information with six counts of lascivious acts with a minor. Five of those charges related to the current student, and one count related to one of the former students. No charges were filed concerning the other former student, who was not a minor when the acts were allegedly committed. The State eventually dismissed the charge concerning the former student but relied on that student's testimony at trial on the remaining five counts.

The jury found Twigg guilty; however, that conviction was reversed in *State v. Twigg*, No. 11-0733, 2012 WL 3590045 (Iowa Ct. App. Aug. 22, 2012), and the case was remanded for a new trial.

The case was retried in May 2013, and the jury again found Twigg guilty on all five counts of lascivious acts with a minor child. After an unsuccessful direct appeal,[1] Twigg filed an application for postconviction relief on March 10, 2015. The district court scheduled the PCR proceeding for October 5, 2015; however, the State filed a motion to dismiss the application, claiming the issues raised in the application had been previously adjudicated in the preceding two direct appeals. The district court took the motion under advisement and set it for hearing on the same day as the PCR proceeding. The court then denied the

---

[1] *See State v. Twigg*, No. 13-1094, 2014 WL 3747676 (Iowa Ct. App. July 30, 2014).

State's motion, and Twigg filed a motion to amend his petition and an amended and substituted petition. Again, in November 2015, Twigg moved to amend his application, which the court granted. After being rescheduled several times, the PCR proceeding was held on February 22, 2016.

At the PCR hearing, Twigg claimed his second trial counsel breached an essential duty when he failed to obtain for use at trial a transcript of the meeting that occurred with school officials where Twigg confessed to the incidents. Although the police and school officials denied recording the meeting, Twigg's counsel at his first trial seemed to remember seeing a transcript of that meeting; however, counsel was no longer in possession of it. Twigg said he obtained the transcript and gave it to his first attorney but did not keep a copy of it. Twigg also contended his second trial counsel was ineffective in his failure to fully develop his defense that the acts were not sexually motivated. He alleges trial counsel did not effectively examine or question the expert witness who testified on his behalf at his second trial.

The PCR court dismissed Twigg's application in an order issued on February 26, 2016. Twigg now appeals.

**II. Standard of Review.**

"Postconviction proceedings are law actions ordinarily reviewed for errors at law." *Bagley v. State*, 596 N.W.2d 893, 895 (Iowa 1999).

We review claims of ineffective assistance of counsel de novo. *See Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012). To prevail on a claim of ineffective assistance of counsel, Twigg must prove by a preponderance of the evidence (1) his attorney failed to perform an essential duty and (2) prejudice

resulted from the failure. *See State v. Rodriguez*, 804 N.W.2d 844, 848 (Iowa 2011). We "look to the cumulative effect of counsel's errors to determine whether the defendant satisfied the prejudice prong." *State v. Clay*, 824 N.W.2d 488, 500 (Iowa 2012). Twigg's claim will fail if either element is lacking. *See State v. Ambrose*, 861 N.W.2d 550, 556 (Iowa 2015). Twigg must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Additionally, "[i]mprovident trial strategy, miscalculated tactics, and mistakes in judgment do not necessarily amount to ineffective assistance of counsel." *State v. Wissing*, 528 N.W.2d 561, 564 (Iowa 1995). And "strategic decisions made after 'thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2011) (quoting *Strickland*, 466 U.S. at 690).

## III. Discussion.

### A. Meeting Transcript

Twigg first maintains the PCR court erred in finding his second trial counsel was not ineffective for failing to obtain the transcript from the January 2010 meeting between Twigg, school administrators, and police officers. Alternatively, Twigg contends his PCR counsel was ineffective in failing to obtain the transcript. Twigg claims the transcript is important as it contains impeachment evidence.

Twigg maintains a record of the meeting existed and had, at one time, been in his possession. He claims to have received the transcript from the Iowa Department of Education and then maintains he turned over his only copy to his attorney at his first trial. Twigg's attorney from his second trial testified he contacted the first attorney about the transcript. The first attorney apparently told the second attorney that he remembered seeing something like what Twigg described. However, the first attorney indicated he could not locate the transcript in his office. The second attorney contacted both prosecutors and the clerk's office to see if they had a copy; however, no one did. Neither the first or second prosecutor remembered anything like what Twigg described.

Having reached an impasse in the search for the transcript, Twigg's second attorney deposed the individuals who participated in the meeting with Twigg, namely, the school officials and the two plain-clothes police officers. Twigg's attorney asked each individual about whether the interview with Twigg at the school had been recorded and if the school was equipped to do such a recording. Everyone testified that the meeting had not been transcribed or recorded.

Twigg contends that the transcript from this meeting would have been useful to his defense in that it would show he never made the statements he was alleged to have made in other police reports and narratives. Specifically, Twigg testified to two inaccuracies that allegedly could have been resolved with the transcript. First, he claims he never admitted at the meeting to paying "the student to strip down and dress in a towel and do push-ups or sit-ups and so forth." Second, he contends the transcript would show that a certain school

official was not present at the meeting, despite testimony at trial that he was there.

On our de novo review, we find Twigg cannot prevail on his ineffective-assistance claim. Twigg cannot prove that he was prejudiced by his attorneys' failure to obtain a copy of the transcript, if it existed. Neither of Twigg's examples of potential inconsistencies demonstrates the outcome of his trial would have been different if the transcript were available. The complaining witness testified at trial to the events Twigg denies admitting at the meeting. Whether or not Twigg made the admission is not critical to his defense he lacked sexual intent. And, it is unclear what the significance is of the school official's presence or absence at the meeting.

In order to maintain a claim of ineffective assistance of counsel for postconviction review, an applicant must make a minimal showing by which this court can assess the viability of the claim. *See State v. Wagner*, 410 N.W.2d 207, 215 (Iowa 1987). Twigg has not elaborated on his claims to show how his counsels' inactions caused him prejudice. His bald assertions they were ineffective are insufficient to sustain his ineffective-assistance claims. *See id.* Therefore, these claims fail.

Having found no prejudice, we need not consider the remaining element. *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015) ("If we conclude a claimant has failed to establish either of these elements, we need not address the remaining element.").

## B. Expert Witness Claim

Twigg next contends his second trial counsel was ineffective for failing to develop his defense that his behavior was "weird" but was not sexual in nature. Specifically, Twigg argues his trial counsel ineffectively examined the forensic psychiatrist who testified for the defense to explain the difference between "weird behavior" and "sexual behavior." Twigg urges us to reverse the convictions and remand the case for a new trial.

According to trial counsel's testimony at the PCR proceeding, the defense forensic psychiatrist administered several tests on Twigg, which led the psychiatrist to opine at trial that Twigg did not act with sexual intent and that some of the acts he admitted to committing even suggested a lack of sexual intent—a necessary element in the State's case.[2] Trial counsel further testified that although the expert's demeanor did not come "off terribly well," he thought "his testimony was fine" and that "unfortunately the nature of the allegations was too much for the expert to overcome." And when asked about why he chose to call this expert, trial counsel indicated,

> It was definitely—the focus was to say I know it looks sexual and I think the expert even—we tried to take points where the expert said we know this looks sexual, that's why we're here in trial. Because it looks pretty sexual, but it isn't sexual. You have to take my word for it. Well, the jury didn't take his word for it. But that was really [the] only the defense we had. I thought it was a decent shot. It was difficult just because of the nature of the facts, but from a legal perspective I thought it was plausible, possible.

---

[2] Iowa Code section 709.14 provides:
> It is unlawful for a person over eighteen years of age who is in a position of authority over a minor to force, persuade, or coerce a minor, with or without consent, to disrobe or partially disrobe for the purpose of arousing or satisfying the sexual desires of either of them.

Twigg has not shown a different direct examination or presentation of the expert witness might have changed the jury's guilty verdict. Trial counsel advanced a defense he thought might be successful, although the jury disagreed. Even if the testimony from the expert had led the jury to conclude Twigg's behavior was "weird," there is nothing to indicate they would not have also found his behavior to be "sexual." The two notions are not necessarily mutually exclusive. However, counsel made a tactical decision to present a defense and obtained expert testimony in support of the defense; Twigg has not shown in what respects counsel's representation should have been different such that our confidence in the outcome is undermined.

Because we find Twigg suffered no prejudice, we need not consider the breach-of-an-essential-duty element of Twigg's claim. *See id.* at 868.

For the foregoing reasons, we affirm the judgment of the district court denying Twigg's application for postconviction relief.

**AFFIRMED.**