# IN THE COURT OF APPEALS OF IOWA

No. 17-1417
Filed December 19, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**GLENN ROBERT WEBSTER,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Polk County, David May (motion to dismiss) and Robert J. Blink (trial), Judges.

        Glenn Webster appeals his convictions of two drug-related crimes. **AFFIRMED.**

        Raya D. Dimitrova of Carr & Wright, P.L.C., Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

        Considered by Tabor, P.J., Mullins, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**SCOTT, Senior Judge.**

Upon the evidence presented at trial, a reasonable jury could make the following factual findings. In November 2015, members of a narcotics task force executed a search warrant on Glenn Webster's apartment, where he resided alone. Upon receiving no response to their knock and announce, police breached the apartment, discovered no one was home, and began their search. While the officers were searching, Webster and a female came into the apartment through the back door. Officers found $498 in cash and a cell phone on Webster's person. In the phone, officers found an incoming text message advising Webster, "its here i have a half an 0z for you." A locked safe was located in the west bedroom of the apartment in which Officer Kempnich found, among other items, four methamphetamine (meth) pipes, several bags of meth, a digital scale, three syringes, and a Gameboy case containing several small orange baggies. Officers also found multiple unhooked surveillance cameras and a taser of sorts.

Officer Scarlett interviewed Webster on the scene.[1] Webster admitted the items in the safe belonged to him and advised he had "about a quarter ounce," at least seven grams but maybe as much as nine grams,[2] of meth in the safe. A report from the state crime lab indicates a total of 9.44 grams of meth was discovered in Webster's possession. Webster additionally conceded to Scarlett that, for about the last month, he had been purchasing about a quarter of an ounce of meth every other day; he would then "break it down" and sell to others a portion

---

[1] An audio recording of the interview was admitted as evidence and played for the jury.
[2] Trial testimony reflects that an ounce consists of 28.35 grams. A quarter ounce would therefore amount to approximately 7.09 grams.

of each quarter ounce in quarter- or half-gram increments; and he would personally use a "teener," or about 1.8 grams, of the substance per day.

Kempnich and Scarlett collectively testified the presence of the pipes and syringes, and possibly a hookah that was also found, were consistent with personal use of the meth. Kempnich testified the presence of the several empty baggies, the multiple baggies containing meth, and the digital scale were consistent with distribution of the drug. Kempnich also testified an average user of meth purchases a gram or less at a time. Scarlett testified the digital scale, several plastic baggies, taser, and surveillance cameras are common possessions of a drug dealer. He additionally testified the amount of meth found in Webster's residence and the manner in which it was packaged was inconsistent with only personal use, and consistent with the sale of the substance. Scarlett conceded in his testimony on cross-examination that he did not find evidence consistent with Webster being a "large-scale trafficker."

Webster was ultimately charged by trial information with possession of meth in an amount in excess of five grams and less than five kilograms with intent to deliver and failure to affix a drug-tax stamp.[3] The district court denied Webster's pretrial motion to dismiss and the matter proceeded to trial, during which the court overruled Webster's motions for judgment of acquittal. A jury found Webster guilty as charged.[4] Webster appealed following the imposition of sentence.

---

[3] Webster was charged as a second or subsequent offender as to the possession-with-intent-to-deliver charge and a habitual offender as to both charges. Webster was also charged with a number of other crimes stemming from a subsequent event. Those charges were ultimately dismissed upon the State's motion.
[4] Webster stipulated to the trial information's sentencing-enhancement allegations.

On appeal, Webster contends the district court erred in denying his motions to dismiss and for judgment of acquittal.

Webster challenges the district court's ruling on his motion to dismiss on a number of grounds. Our review is for correction of errors at law. *State v. Olsen*, 848 N.W.2d 363, 366 (Iowa 2014). Webster was charged by trial information in October 2016. On October 11, Webster waived formal arraignment and entered a plea of not guilty. He filed his motion to dismiss on November 29, fifty days after arraignment. The State resisted the motion, urging, among other things, the motion was untimely. The district court denied the motion to dismiss on the merits. We affirm the denial of the motion on the ground the motion was untimely, as the motion was filed more than forty days after arraignment and good cause for the delay was not argued, let alone established. *See DeVoss v. State*, 648 N.W.2d 56, 61 (Iowa 2002) ("We have in a number of cases upheld a district court ruling on a ground other than the one upon which the district court relied *provided* the ground was urged in that court."); *see also* Iowa Rs. Crim. P. 2.11(4) ("Motions hereunder . . . shall be filed . . . no later than 40 days after arraignment."), 2.11(6)(c) (providing grounds for motion to dismiss an information); *State v. Wagner*, 410 N.W.2d 207, 212 (Iowa 1987) (finding no attempt to demonstrate good cause for failure to file within required time amounts to waiver).

Next, Webster contends the court erred in denying his motions for judgment of acquittal because "the record does not contain sufficient evidence to support a conviction of possession of a controlled substance with intent to deliver."[5]

---

[5] Webster initially states there was insufficient evidence as to both charges, but only provides us with a substantive argument on the possession-with-intent-to-deliver charge.

Specifically, he argues the evidence was insufficient to show he intended to deliver meth in excess of five grams.

Appellate review of sufficiency-of-the-evidence challenges is for correction of errors at law. *State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018). In assessing the sufficiency of the evidence, courts view "the evidence 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017) (quoting *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017)). All evidence is considered, not just that of an inculpatory nature. *See Huser*, 894 N.W.2d at 490. "[W]e will uphold a verdict if substantial evidence supports it." *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018) (quoting *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017)). "Evidence is substantial if, 'when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *Ramirez*, 895 N.W.2d at 890). . Webster argues the evidence shows the meth found in his possession was for personal use, rather than for sale, and therefore no intent to deliver more than five grams can be shown. The fact that some of the meth in Webster's possession was for personal use is undisputed. He advised Scarlett of the same and had paraphernalia consistent with personal use. However, the evidence is also undisputed that Webster was involved in the sale of meth. He readily admitted he purchased around a quarter ounce of meth every other day. He would then personally use a "teener," or 1.8 grams, per day, while selling the remainder for a profit. In this

---

Consequently, we only consider the sufficiency of the evidence for that charge. *See* Iowa R. App. P. 6.903(2)(g)(3).

particular instance, officers found Webster in possession of 9.44 grams of meth. Viewing the evidence in the light most favorable to the State, the jury could have reasonably concluded that over the next two days, Webster specifically intended to personally use 3.6 grams and sell the remaining 5.84 grams. We find the evidence sufficient to establish the challenged elements of the crime beyond a reasonable doubt.

We affirm the denial of Webster's motions for dismissal and judgment of acquittal and affirm Webster's convictions.

**AFFIRMED.**