**STATE of Iowa, Appellee,**

v.

**Brian Joseph LANGE, Appellant.**

No. 93–1028.

Supreme Court of Iowa.

April 26, 1995.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman, Asst. State Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Robert P. Ewald, Asst. Atty. Gen., Thomas J. Ferguson, County Attorney, and Kimberly Griffith, Asst. County Atty., for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LAVORATO, Justice.

In a bench trial, the district court found Brian Joseph Lange guilty of violating Iowa Code section 421A.12 (1991) (failure to affix a drug tax stamp to marijuana). He appeals from the judgment of conviction and sentence, raising four issues. First, Lange contends the district court violated his due process rights when it denied his motion based upon prosecutorial delay. Second, he believes the court erred by twice refusing to allow him to make offers of proof. Third, he argues the court's entry of judgment on the drug tax stamp conviction constituted double punishment in violation of his right against double jeopardy. He argues his right against double jeopardy was violated because he was previously assessed and had paid all drug stamp tax assessments. Last, he argues that we should overrule *State v. Lange*, 495 N.W.2d 105 (Iowa 1992) (*Lange I*). In that appeal, the State successfully challenged a district court ruling that dismissed the drug tax stamp charge on double jeopardy grounds. In *Lange I*, we held that Lange waived his double jeopardy claim when he resisted consolidation of the drug tax stamp charge with his prosecution for manufacture of a controlled substance involving the same marijuana. We affirm on all four issues.

I. *Background Facts.*

On April 1, 1991, Waterloo police officers Jeffrey Duggan and Randall Chapman went to an apartment shared by Lange and Brenda Weekley at 521 Dundee. They were looking for Pat Henson regarding a domestic abuse report. Weekley was home alone, and met the officers at the door. She told Duggan and Chapman that Henson was not there, but gave them permission to come in and look for him.

Duggan's search took him to the bedroom of Lange and Weekley. The closet door was open. Clothing hanging there was visible and in open display. Duggan believed that Henson might be hiding in the closet. As Duggan began to move the clothes aside, he discovered two potted marijuana plants.

Lange arrived home shortly after this discovery, and was arrested for manufacture of

marijuana. There was no drug tax stamp affixed to either plant.

## II. *Background Proceedings.*

On May 7, 1991, the State filed a trial information charging Lange with manufacture of a controlled substance (marijuana) in violation of Iowa Code section 204.401(1)(d). The district court set a trial date. Later the court continued the trial date.

On October 21 the State filed a complaint accusing Lange of failure to affix a drug tax stamp in violation of Iowa Code section 421A.12. This charge also arose from evidence taken in the April 1 search.

On October 30 the State filed a motion to consolidate the manufacture and drug tax stamp charges. On November 6 the State filed a trial information charging Lange with failure to affix a drug tax stamp in violation of Iowa Code section 421A.12. At the November 15 hearing on the State's motion to consolidate, Lange resisted the motion because (1) it was untimely, (2) there was no good cause for the State's delay in filing the drug tax stamp charge, and (3) Lange was willing to waive his right to a jury trial on the manufacture charge but not on the drug tax stamp charge.

Although the county attorney argued the State would have problems with *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), if the court refused to consolidate, District Judge Joseph C. Keefe denied the State's motion to consolidate.

On January 8, 1992, District Judge James C. Bauch heard the manufacture charge in a bench trial on the minutes of testimony in the trial information. On January 21 Judge Bauch found Lange guilty as charged. Judge Bauch also set the drug tax stamp charge for jury trial.

On January 24 Lange moved to dismiss the drug tax stamp charge based on double jeopardy and prosecutorial delay. District Associate Judge Joseph Moothart dismissed the drug tax stamp charge as being in violation of the Double Jeopardy Clause of the Fifth Amendment to the federal Constitution. The Judge did not address the prosecutorial delay issue.

The State appealed. We held that Lange waived his double jeopardy claims on the charge of failure to affix a drug tax stamp by successfully challenging the State's motion to consolidate the manufacture and drug tax stamp charges and electing to try the two cases separately. *See Lange I,* 495 N.W.2d at 108.

We remanded the case for trial on the drug tax stamp charge. However, we noted that before trial, the district court should address the motion to dismiss based upon prosecutorial delay. *Id.*

On remand, the district court heard Lange's motion to dismiss the drug tax stamp charge based upon prosecutorial delay. Following the hearing, District Judge L.D. Lybbert denied the motion.

The case proceeded to a bench trial. During trial, District Judge George L. Stigler denied defense counsel an opportunity to make offers of proof in two instances. The first was during defense counsel's cross-examination of a state revenue agent. This offer centered on the availability of drug tax stamps and the procedures for actually purchasing a drug tax stamp. The second was during defense counsel's examination of an investigating officer during Lange's case-in-chief. This offer went to the procedures the officer normally followed in other cases of drug tax stamp violations.

The court found Lange guilty of the drug tax stamp charge. At sentencing before Judge Bauch, Lange challenged the entry of judgment on his conviction of the drug tax stamp charge on double jeopardy grounds. Lange told the court that before trial on the drug tax stamp charge he had been assessed and had paid $1085 in drug tax stamp assessments on the drugs that formed the basis for the charge. Any additional subsequent punishment, Lange argued, would constitute double jeopardy in violation of his right against double jeopardy.

Judge Bauch denied the challenge and entered judgment and sentence on the drug tax stamp charge. The judge sentenced Lange to a term of imprisonment not to exceed five years. The judge then suspended the sentence and placed Lange on probation for two

to five years. In addition, the judge ordered this sentence to run concurrently with Lange's sentence on the manufacture charge.

### III. *Prosecutorial Delay.*

■ Lange contends the State's seven month delay in arresting and charging him on the drug tax stamp charge violates his rights to due process. As to this issue, Lange alleges the denial of a constitutional right. Our review is therefore de novo. *See State v. Gallup*, 500 N.W.2d 437, 441 (Iowa 1993).

Lange's claim is not one for denial of speedy indictment or speedy trial under the Iowa Rules of Criminal Procedure. *See* Iowa R.Crim.P. 27. Lange's claim is a due process one under the Fifth Amendment to the federal Constitution as applied to the states through the Fourteenth Amendment. *State v. Hall*, 395 N.W.2d 640, 642 (Iowa 1986). This claim is based on alleged unreasonable delay between the time the offense was committed and the time Lange was arrested and charged with the drug tax stamp offense. *See State v. Williams*, 264 N.W.2d 779, 783–84 (Iowa 1978).

The statute of limitations for returning an indictment on a drug tax stamp charge is six years. *See* Iowa Code § 421A.12. So Lange's indictment on this offense was within the statutory period.

The limitations period is not the only standard for determining whether a defendant has been denied due process under the federal Constitution. The length of the delay and the reason for it must be balanced against the resulting prejudice against the defendant. *Williams*, 264 N.W.2d at 782–83.

■ Before a defendant can claim relief for prosecutorial delay, the record must establish two conditions. First, the delay is unreasonable and without justification. Second, the delay must have resulted in actual prejudice to the defendant's defense. *State v. Sunclades*, 305 N.W.2d 491, 494 (Iowa 1981). The actual prejudice must result from the State's "intentional attempt to gain a tactical advantage by delaying the initiation of charges." *State v. Wagner*, 410 N.W.2d 207, 210 (Iowa 1987). The due process protection is guaranteed to defendants to assure that the State will not employ tricks to gain such an advantage over defendants. *Hall*, 395 N.W.2d at 643.

■ A. *Unreasonable delay.* Lange contends here, as he did in district court, that no proper reason existed for the seven month prosecutorial delay on the drug tax stamp charge. Lange points out that all evidence relating to the charge was seized and available to the State when he was arrested in April 1991. At this time, over twenty-eight grams of marijuana were found in his home along with two pots containing three to five marijuana plants. The police were aware the drug tax stamps were not affixed at the time of the seizure. So, he concludes, no reason existed to explain the State's failure to determine whether the plants seized contained fourteen and one-half additional grams of marijuana for purposes of filing or disposing of a drug tax stamp charge. *See* Iowa Code §§ 421A.1(3)(b) (dealer means person possessing forty-two and one-half grams of marijuana); 421A.3 (dealer must pay stamp tax and affix stamp to taxable substance); 421A.7(1) (tax imposed on dealer at rate of five dollars on each gram of marijuana or each portion of a gram); 421A.12 (dealer possessing taxable substance without affixing stamp is guilty of class "D" felony).

In our de novo review, we agree with the district court that the State established a motive for the delay other than an intentional attempt to gain a tactical advantage over Lange. Like the district court, we agree the delay was not unreasonable and it was justifiable. The State was trying to preserve the marijuana plants in their original state so it could use them as evidence on the manufacture charge. The State was entitled to show the jury the actual plants. *See, e.g., State v. Kantaris*, 280 N.W.2d 389, 392 (Iowa 1979) (cocaine admissible though discolored at time of trial because of analyzing agents and passage of time).

This attempt at preservation meant the plants could not be dried and weighed. Without knowledge of the marijuana weight, the State had no sufficient evidence to establish the forty-two and one-half gram weight requirement for the drug tax stamp charge.

In the latter part of August 1991, the officer who had possession of the plants determined they could no longer be preserved and would soon be entirely lost as evidence. In early September he was authorized to strip the plants and weigh the dead leaves. The officer found the leaves weighed about fifty-nine grams, which was well over the forty-two and one-half gram requirement for the drug tax stamp charge. This information was ultimately forwarded to the county attorney in late September 1991. The county attorney then filed a complaint and obtained an arrest warrant for the drug tax stamp charge on October 21.

B. *Prejudice.* As the State points out, Lange's only argument of actual prejudice is that the plants were allowed to grow before they were finally weighed. The record contains no evidence that the marijuana plants grew longer or heavier while in the State's possession. The officer who had possession of the plants testified that when marijuana plants start deteriorating and breaking apart—as these plants were—they lose weight. Such plants, according to the officer, start to lose weight from the day they begin to dry and break down.

In our de novo review, we conclude the record establishes that Lange suffered no actual prejudice because of the prosecutorial delay.

IV. *Offers of Proof.*

Lange's second contention is that the district court erred when it did not permit him to make two offers of proof.

In the State's case-in-chief, an Iowa revenue agent identified samples of the actual drug tax stamps that the State uses. Defense counsel questioned the agent closely about the stamps and how to obtain them. During the questioning, the State objected a number of times on relevancy grounds. Some of these objections the court sustained. Then this exchange took place:

Q. Apparently these [stamps] are only sold out of Des Moines? A. Yes.

Q. So a person in Waterloo would have to travel to Des Moines in order to obtain one?

PROSECUTOR: Objection, Your Honor. This doesn't have anything to do with whether at the time it was affixed or not; because buying a stamp isn't part of the offense.

COURT: What is the relevance?

DEFENSE COUNSEL: Your Honor, I believe that we can offer some testimony with respect to this law and ultimately what could—could amount to be the constitutionality—constitutionality of that law; and I believe that we should be given wide berth in that respect.

COURT: There is no relevance to where you buy this, whether it be in Des Moines or at the local offices here. The only thing that matters is whether one was affixed in this instance. Any constitutional complaints you'll probably have to take up in Des Moines.

DEFENSE COUNSEL: Your Honor, just simply so I put it for the record, it would be our position that it would be difficult to take this matter up on appeal without at least laying some sort of a record at this point.

COURT: The record, as I understand it, is that there's some sort of constitutional defect because the thing is not sold in more locations; and my point to you is that the wisdom of the law will not be inquired into by me; but you—

DEFENSE COUNSEL: I understand that, Your Honor.

COURT: You've made your record in that regard. You feel there is some sort of constitutional defect because it's not sold in every revenue office. Your record is made.

DEFENSE COUNSEL: Thank you, Your Honor. I wasn't arguing with the court. I simply wanted to make the record clear.

. . . .

Q. Has anyone ever come in [to the Des Moines office to obtain information about drug tax stamps]?

PROSECUTOR: Objection, Your Honor. This just isn't relevant.

COURT: Sustained.

DEFENSE COUNSEL: Your Honor, I would simply ask at this point to make an offer of proof with respect to that issue.

COURT: What difference does it make?

DEFENSE COUNSEL: Your Honor, I think we're making our record with respect to the law itself; and we'd ask to make an offer of proof at this point, have him answer the question with the idea—

COURT: The [Iowa] supreme court has sustained the constitutionality of the law, and so that's sufficient for our purposes. If there's going to be a challenge along the lines of a constitutional nature to this law, the law already having been examined by the Iowa supreme court, it's going to have to be declared to be unconstitutional by the—the supreme court. But in any regard, your question is whether anyone has come in to purchase these stamps; and that's not relevant to any inquiry at issue here.

DEFENSE COUNSEL: So my—just so I have the record clear at this point, you're denying me opportunity to make an offer of proof with respect to that issue?

COURT: It's not relevant, not even in an offer of proof.

DEFENSE COUNSEL: All right, no further questions.

Following this exchange, the State rested. Lange called as his first witness the officer who had earlier testified that he had not seen any drug tax stamp affixed to the marijuana in Lange's closet. During this examination, the officer admitted that his report contained no reference to a drug tax stamp and that he was not looking for a drug tax stamp when he seized the plants. This exchange followed:

Q. You're familiar with the drug tax stamp and that there is a requirement under Iowa law that a stamp be affixed, aren't you? A. Yes.

Q. And yet it's your testimony that when you found these controlled substances you didn't look for one? A. I did not see one; so, no, I didn't look—I mean, a drug tax stamp is supposed to be obviously affixed in plain view if there is one affixed; and I did not see one.

Q. Have you ever seen one affixed? A. No, never have.

Q. Okay. Have you ever testified in cases previously about your duties as a police officer regarding the fact that you didn't find a tax stamp? A. Yes.

Q. Okay. And in those cases did you testify similarly to this case where you said you weren't looking to see if one was there or not?

PROSECUTOR: Your Honor, what does that have to do with anything? The objection is relevance.

COURT: Sustained.

DEFENSE COUNSEL: I think it's relevant with respect to, Your Honor, if he wasn't looking for one, there was more of a chance that he would have missed one if it was there.

COURT: Okay. The objection has been sustained.

DEFENSE COUNSEL: Again, we'd ask to make the same offer of proof with respect to that question, Your Honor.

COURT: He's indicated that he was not looking for one. I don't know quite what more you would have him testify to.

DEFENSE COUNSEL: Your Honor, the minutes of testimony in this case indicate that this witness is an expert in the area of controlled substances, and in that respect I think it is relevant with respect to whether or not a stamp might have been there. This officer's testimony, what he was looking for when he was there.

COURT: Well, your question wasn't that. Your question was whether he has testified in other cases in reference to whether there were stamps in those other cases, and that's not relevant to anything.

DEFENSE COUNSEL: Well—

COURT: The facts of any other case don't count. The only thing that counts is the facts of this case.

DEFENSE COUNSEL: Again, just for clarification, I don't want to argue with the court, but I'm assuming—with that I'm going to assume under the understanding that the offer of proof is denied?

COURT: Your assumption is correct.

DEFENSE COUNSEL: Thank you. I don't have anything further.

At the outset, we strongly disapprove of the district court's refusal to allow defense counsel to make an offer of proof. The purpose of such an offer is two-fold. First, it gives the district court a more adequate basis for its evidentiary ruling. Second, the offer provides a meaningful record for appellate review. Without such a record, the reviewing court cannot base error on speculation as to the answers that would have been given to questions had the district court permitted the offer. *State v. Ritchison*, 223 N.W.2d 207, 212–13 (Iowa 1974).

As this court has said,

endless or frivolous proffers can be vexatious and, on occasion, might become an end in themselves and interrupt the orderly trial process. Nevertheless, a proffer should never be absolutely prohibited. In cases of extreme vexation, a record invitation should be extended to counsel to make the proffer at an appropriate recess.

*State v. Harrington*, 349 N.W.2d 758, 760 (Iowa 1984).

■ This court considers offers of proof so important that we require them to preserve error. *Id.* We will not presume prejudice when the answer to the question is not obvious and the proponent made no offer of proof. *State v. Windsor*, 316 N.W.2d 684, 688 (Iowa 1982) (citation omitted). Nor will we consider error preserved without such an offer unless the whole record makes apparent what is sought to be proven. *In re Estate of Herm*, 284 N.W.2d 191, 197 (Iowa 1979). To emphasize how important we think offers of proof are, we have held that a district court's refusal to permit them is usually error. *Harrington*, 349 N.W.2d at 760. *See also* L.S. Tellier, Annotation, *Ruling on Offer of Proof as Error*, 89 A.L.R.2d 279, 286 (1963).

■ However, a refusal to allow an offer of proof is not *reversible* error when the reviewing court is able to determine what the contents of the offer of proof would have been. *Harrington*, 349 N.W.2d at 760–61.

■ Here, in the first offer of proof, the evidence excluded was the agent's response to the question whether anyone had ever come into the Des Moines office of the department of revenue to obtain information about drug tax stamps. Obviously the answer would be "yes" or "no." We agree with the State that neither answer was relevant to the question whether Lange was guilty of failure to affix a drug tax stamp to the marijuana. The district court therefore correctly sustained the objection on relevancy grounds. Because the content of the offer of proof was readily apparent, there was no need for Lange to make an offer of proof to preserve error. The district court therefore committed no reversible error when it did not permit defense counsel to make this offer of proof.

We reached the same result in a similar scenario. *Ritchison*, 223 N.W.2d at 213. In *Ritchison*, the defendant was charged with selling a narcotic drug—marijuana. The statute defined marijuana as a narcotic drug. The defendant attempted to establish on cross-examination of a State expert witness that marijuana is not "chemically" a narcotic drug. The district court sustained the State's relevancy objection and refused the defendant's request to make an offer of proof. We held that the district court committed no reversible error either in its ruling or in its refusal to permit the offer of proof because the defendant's questions and answers were enough to indicate whether the testimony was relevant. In these circumstances no offer of proof was necessary to preserve error. *Ritchison*, 223 N.W.2d at 212–13.

We apply the same reasoning to the second offer of proof. The question objected to was whether the officer had testified similarly in other cases that he was not looking to see if there was a drug tax stamp. Again, the obvious response would be either "yes" or "no." But neither response was relevant to the charge. In addition, the State is correct that neither response would have any impeachment value because the officer's testimony would be based on his conduct in investigating other cases, not this case. What the officer did in other cases is a

collateral issue and impeachment on collateral issues is not permissible. *State v. Parker,* 261 Iowa 88, 97, 151 N.W.2d 505, 510 (1967). Again, no offer of proof was necessary to preserve error. The district court likewise here committed no reversible error either in its ruling or in its refusal to permit the defendant to make an offer of proof as to this witness. *Compare People v. Richmond,* 201 Ill.App.3d 130, 136–40, 147 Ill.Dec. 302, 307–09, 559 N.E.2d 302, 307–09 (1990) (trial court properly refused to allow defense counsel in murder prosecution to make an offer of proof regarding witness seeking "crimestopper" money in another case, where evidence of compensation paid witness in prior case had no relevancy to present prosecution and was too remote to act reliably as impeachment).

In addition, evidence of Lange's guilt was overwhelming, rendering harmless any error arising from the district court's refusal to permit Lange to make these offers of proof. *See Harrington,* 349 N.W.2d at 761–62 (applying harmless error rule to district court's refusal to permit defendant to make offer of proof).

V. *The Double Jeopardy Claim: Imposing Double Punishment for the Same Offense.*

■ Lange's third contention is that his sentence on the drug tax stamp conviction constituted double punishment in violation of his right against double jeopardy. For that reason, he believes the district court erred when it imposed a second punishment based on the same offense. Lange bases the double punishment contention on the fact that before his sentence on the drug tax stamp conviction, he had been assessed and had paid $1085 in drug tax stamp assessments. These assessments were on the drugs that formed the basis for the drug tax stamp charge and conviction. Lange made this same contention and cited the assessment to the sentencing judge. In support of his contention, Lange cited *In re Kurth Ranch,* 986 F.2d 1308 (9th Cir.1993).

*In re Kurth Ranch* has since reached the United States Supreme Court. *See Montana Dep't of Revenue v. Kurth Ranch,* 511 U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). In *Montana Department of Revenue v. Kurth Ranch,* the Supreme Court had a Montana statute before it that imposes a tax "on the possession and storage of dangerous drugs." *Id.* at ——, 114 S.Ct. at 1941, 128 L.Ed.2d at 773. This statute expressly provides that the tax is to be "collected only after any state or federal fines or forfeitures have been satisfied." *Id.* at ——, 114 S.Ct. at 1941, 128 L.Ed.2d at 773. The tax is either ten percent of the assessed market value of the drugs or a specified amount depending on the drug ($100 per ounce for marijuana). Under agency rules, taxpayers must file a return within seventy-two hours of their arrest. The taxpayer has no obligation to file a return or to pay any tax unless and until the taxpayer is arrested. The Montana statute presented the Supreme Court with the following question: "whether a tax on the possession of illegal drugs assessed after the State has imposed a criminal penalty for the same conduct may violate the constitutional prohibition against successive punishments for the same offense." *Id.* at ——, 114 S.Ct. at 1941, 128 L.Ed.2d at 772–73. This is the same double jeopardy argument Lange raises with us. *See id.* at —— n. 1, 114 S.Ct. at 1941 n. 1, 128 L.Ed.2d at 773 n. 1 (Double Jeopardy Clause of Fifth Amendment to federal Constitution protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense). The question turned on "whether the tax has punitive characteristics that subject it to the constraints of the Double Jeopardy Clause." *Id.* at ——, 114 S.Ct. at 1945, 128 L.Ed.2d at 778.

The Supreme Court began its analysis by "noting that neither a high rate of taxation nor an obvious deterrent purpose automatically marks this tax as a form of punishment." *Id.* at ——, 114 S.Ct. at 1946, 128 L.Ed.2d at 779. Yet, the Court recognized these attributes as consistent with a punitive character. The Court, however, stopped short of saying these attributes in and of themselves render the tax punitive. *Id.* at ——, 114 S.Ct. at 1946–47, 128 L.Ed.2d at 779–80.

The Court zeroed in on the two attributes of the Montana statute that did render it punitive and violative of the Double Jeopardy Clause. First, the tax is conditioned on the commission of a crime. The Court saw this condition as "significant of penal and prohibitory intent rather than the gathering of revenue." *Id.* at ——, 114 S.Ct. at 1947, 128 L.Ed.2d at 779–80. Significantly, the Court said:

In this case, the tax assessment not only hinges on the commission of a crime, it also is exacted only after the taxpayer has been arrested for the precise conduct that gives rise to the tax obligation in the first place. Persons who have been arrested for possessing marijuana constitute the entire class of taxpayers subject to the Montana tax.

*Id.* at ——, 114 S.Ct. at 1947, 128 L.Ed.2d at 780.

Second, while the statute characterized the tax as a property tax—that is a tax on the possession and storage of dangerous drugs—the Court noted that the tax is actually levied on goods the taxpayer neither owns nor possesses when the tax is imposed. *Id.* at ——, 114 S.Ct. at 1948, 128 L.Ed.2d at 780–81. On this point, the Court reasoned this way:

Indeed, the State presumably *destroyed* the contraband goods in this case before the tax on them was assessed. If a statute that amounts to a confiscation of property is unconstitutional, a tax on previously confiscated goods is at least questionable. A tax on "possession" of goods that no longer exist and that the taxpayer never lawfully possessed has an unmistakable punitive character. This tax, imposed on criminals and no others, departs so far from normal revenue laws as to become a form of punishment.

Taken as a whole, this drug tax is a concoction of anomalies, too far removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of double jeopardy analysis.

*Id.* at ——, 114 S.Ct. at 1948, 128 L.Ed.2d at 781 (citations omitted).

Our drug tax stamp statute has neither characteristic that the Supreme Court found punitive in the Montana statute. Iowa Code section 421A.1(3) imposes the tax on a dealer and makes the tax due and payable immediately upon manufacture, production, acquisition, purchase or possession by a dealer. A "dealer" is defined as

any person who ships, transports, or imports into this state or acquires, purchases, possesses, manufactures, or produces in this state any of the following:

a. Seven or more grams of a taxable substance other than marijuana, but including a taxable substance that is a mixture of marijuana and other taxable substances.

b. Forty-two and one-half grams or more of a substance consisting of or containing marijuana.

c. Ten or more dosage units of a taxable substance which is not sold by weight.

Iowa Code § 421A.1(3). As this statute makes clear, no tax is imposed unless certain threshold limits are reached. For example, in the case of marijuana, no tax is imposed below forty-two and one-half grams. And, in the case of marijuana, the rate of tax above this amount is five dollars for each gram or portion of a gram. Iowa Code § 421A.7. So a person may possess a controlled substance illegally but still not be subject to the tax.

The Iowa director of revenue and finance has the statutory obligation to assess and collect the tax after the director learns that a drug tax stamp was required but not purchased. *See* Iowa Code § 421A.9. The director collects the tax in the same manner as provided for the collection of delinquent income taxes. *Id.*

Unlike the Montana tax, the imposition of the Iowa tax is therefore not conditioned on the commission of a crime. Nor is it exacted only after the taxpayer is arrested.

Moreover, in *State v. Gallup,* 500 N.W.2d 437 (Iowa 1993), we held that the tax under section 421A.7—and an additional penalty for failure to pay the tax under section 421A.12—did not impose additional punishment for criminal conduct in violation of due process. Rather, we held that such a tax and penalty were a legitimate tax and civil sanc-

tion that were not conditioned on commission of a crime. *Id.* at 444–45.

In *Gallup*, we concluded our drug tax stamp statute was no different than the federal marijuana statute that was upheld in *United States v. Sanchez*, 340 U.S. 42, 71 S.Ct. 108, 95 L.Ed. 47 (1950). *Id.* at 445. ("We see no substantial difference between chapter 421A and the federal marijuana statute that was upheld in *Sanchez.* We view the chapter 421A tax and penalty as civil, rather than as criminal, sanctions and as a proper exercise of the State's taxing power.").

In *Kurth Ranch*, the Supreme Court relied on *Sanchez* to support its analysis that a tax conditioned on the commission of a crime is a criminal rather than civil sanction. The Court, referring to *Sanchez*, noted that the Court "has relied on the absence of such a condition to support its conclusion that a particular federal tax was a civil rather than a criminal sanction." *Kurth Ranch*, 511 U.S. at ——, 114 S.Ct. at 1947, 128 L.Ed.2d at 780. In a footnote to this statement the Court said:

> In *Sanchez* we examined a federal marijuana tax [since repealed] that taxed the transfer of marijuana to a person who has not paid a special tax and registered. Under the statute, the transferor's liability arose when the transferee failed to pay the tax; as a result, "[s]ince his tax liability does not in effect rest on criminal conduct, the tax can be properly called a civil rather than a criminal sanction." 340 U.S. at 45, 71 S.Ct. at 110, 95 L.Ed. at 50.

*Id.* at —— n. 20, 114 S.Ct. at 1947 n. 20, 128 L.Ed.2d at 780 n. 20.

In contrast to the Montana tax, the Iowa drug stamp tax is imposed immediately upon manufacture, production, acquisition, purchase, or possession of the controlled substance. *See* Iowa Code § 421A.3. The Iowa tax, therefore, is not—like the Montana tax— imposed on goods a taxpayer neither owns nor possesses.

We conclude the Iowa drug stamp tax statute is not a criminal penalty. Because it is not a criminal penalty, the sentence on the drug tax stamp conviction did not constitute a second punishment violative of Lange's right against double jeopardy.

## VI. *Lange I.*

Lange's last contention is that our decision in *Lange I* was incorrect. In *Lange I*, we held that under *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), Lange waived his right to assert double jeopardy protections as to the drug tax stamp charge following his conviction on the manufacture charge by successfully challenging the State's motion to consolidate the two charges and electing to try the cases separately. *Lange I*, 495 N.W.2d at 108. Specifically, Lange argues that *Lange I* was incorrectly decided because his consent to consolidation of the manufacture charge and the drug tax stamp charge would have (1) deprived him of his right to a jury trial on the drug tax stamp charge, (2) violated his right to due process because evidence of the weight of marijuana was relevant to the drug tax stamp charge but not to the manufacture charge, and (3) mooted his prosecutorial delay defense. All three—he says—are constitutional rights which he would have had to forego if he did not challenge the consolidation motion. So, he concludes, his resistance to the consolidation motion could not constitute a voluntary waiver of his right against double jeopardy. This is so, Lange says, because under *Jeffers* he could not be forced to choose between waiving his double jeopardy right and these three competing constitutional rights.

■ Lange raised none of these arguments in *Lange I*, though all three should have been readily apparent to him. Because he did not raise these arguments, he waived them. *See State v. Ueding*, 400 N.W.2d 550, 552 n. 2 (Iowa 1987) (on appeal defendant attempted to argue that he was denied due process because the district court refused to give a spoliation instruction; because defendant did not raise the due process argument in the district court, he waived such argument on appeal).

## VII. *Summary and Disposition.*

We summarize our conclusions as follows. First, the prosecutorial delay in filing the

118

drug tax stamp charge did not violate Lange's due process rights. The district court correctly denied Lange's motion to dismiss based upon this delay. Second, the district court's refusal to permit Lange's offers of proof did not amount to reversible error. Third, the sentence on the drug tax stamp conviction did not violate Lange's right against double jeopardy. Last, we refuse to overrule *State v. Lange*, 495 N.W.2d 105 (1992) (*Lange I*). In the first appeal, Lange could have raised the arguments he now raises. Because he did not, he waived these arguments.

We affirm on all issues raised.

**AFFIRMED.**