STATE of Iowa, Plaintiff–Appellee,

v.

Isaiah Tyrell BUCHANAN,
Defendant–Appellant.

No. 10–0157.

Court of Appeals of Iowa.

April 27, 2011.

Mark C. Smith, State Appellate Defender, and Rachel Regenold, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kyle Hanson, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Brad Walz, Assistant County Attorney, for appellee.

Heard by SACKETT, C.J., and DOYLE and DANILSON, JJ. TABOR, J., takes no part.

DANILSON, J.

Isaiah Tyrell Buchanan appeals from the judgment and sentence entered on his conviction following a jury trial for possession of crack cocaine with intent to deliver, in violation of Iowa Code section 124.401(1)(c) (2009). Buchanan contends his counsel was ineffective for failing to object to questions submitted by jurors to be asked of witnesses. Buchanan further alleges the district court erred in denying his motion and request to make an offer of proof in regard to the admission of testimony concerning the arresting officer's reputation and conduct. Upon our review, we find Buchanan's ineffective assistance of counsel must fail because we find no breach of counsel's duty or prejudice. We further conclude the court exercised sound discretion in rejecting Buchanan's requests to admit additional testimony of the arresting officer where the probative value, if any, of the challenged evidence was outweighed by the danger of unfair prejudice that would accompany its admission. We affirm Buchanan's conviction and sentence.

## I. Background Facts and Proceedings.

At around 7 p.m. on August 30, 2009, Waterloo Police Officers Steven Bose and Jamie Sullivan stopped to eat at a Mexican restaurant near downtown Waterloo. As they waited for their food, Officer Sullivan observed Buchanan standing outside by the drive-up window. Aware that Buchanan had an outstanding warrant, the officers walked out the front door to confirm it was him. In the parking lot, Officer Bose saw Buchanan approaching a truck, possibly to make a drug deal.

Both officers called to Buchanan, asking him to "hold up." Buchanan replied, "What, I ain't done nothing wrong," and turned away. Buchanan then started running away from the officers. His right hand was in his pocket. The officers ran after Buchanan. Officer Sullivan, the faster runner, followed on Buchanan's left side, while Officer Bose followed slightly behind on the right. As Buchanan ran past a large Kwik Star gas station, Officer Bose saw him drop a small clear plastic bag from his right hand. Officer Bose stopped immediately to retrieve the bag.

Officer Sullivan continued in pursuit. He did not see Buchanan drop the plastic bag, but heard Officer Bose yell out that Buchanan had thrown something. Officer Sullivan caught up with Buchanan behind Kwik Star and had to use a taser to subdue him. He seized a cell phone and five dollars from Buchanan's pocket.

Testing later confirmed the plastic bag Buchanan dropped contained five individually wrapped "rocks" of crack cocaine, weighing between .09 and .14 grams each with a total weight of .59 grams. Investigator Kristin Hoelscher testified she did not check for fingerprints because it is rare to find fingerprints on bags like the one Buchanan possessed, and the bags are small, "wrinkled," and often "passed back and forth between many different people" or "kept in people's mouth or people's bodily orifices."

Investigator Kye Richter testified the crack cocaine rocks in the bag were worth about $20 each, for a total value of $100. He believed the quantity of crack was consistent with distribution, not personal use. Investigator Richter explained that users typically carry pipes to smoke the drugs, and are not usually arrested with intact rocks because they smoke "immediately or within five or ten minutes" after they purchase the drugs. However, as Investigator Richter testified, "streetlevel dealers" usually carry "three to four rocks" at a time and "commonly" use cell phones to arrange deals.

Buchanan testified he was walking from his parents' house to the nearby liquor store to buy condoms and beer. When officers approached, he panicked and ran away. Buchanan said he did not run because of the outstanding warrants; instead, he testified he fled because he was afraid the police would shoot him. He said he never dropped anything out of his pocket. Instead, he testified that he put his cell phone in his right pocket and then held up his baggy pants while he ran away.

The State charged Buchanan with possession of crack cocaine with intent to deliver. On the first day of trial, the court heard arguments on a motion to determine admissibility of evidence regarding State's witness filed by Buchanan. The motion sought, among other things, to introduce evidence relating to Officer Bose's professional conduct and reputation relating to Officer Bose's delay in writing a report about Buchanan's arrest. Buchanan also requested to make an offer of proof on the issue. The court denied the motion and did not allow Buchanan to make an offer of proof, but allowed him to file a bill of exceptions to record the evidence he requested.

Later during trial, jurors were allowed to submit questions directed to several of the State's witnesses. The court discussed the questions with the parties out of the presence of the jury and decided that two questions were proper, which the court later asked of the witnesses. Counsel was then allowed to conduct additional re-direct and re-cross examination. There was never any direct communication between the jurors and the witnesses.

The jury subsequently returned a guilty verdict, finding Buchanan guilty of possession of crack cocaine with intent to deliver. Following imposition of judgment and sentence, Buchanan appeals.

## II. Juror Questions.

At one of the breaks during the State's case, a juror asked the court attendant whether the jury was permitted ask questions of witnesses. This question was relayed to the court. The court subsequently acknowledged to the jury that such a procedure existed, and explained:

> There is a procedure for a juror to ask a question and this is the procedure: First, you have to write that question down. Then the court attendant will give that question to me. We'll take a recess so that the attorneys and I can discuss that question outside of your hearing. We'll bring you back in and if the decision is that the question should be asked, I will then read the question to the witness and the witness will answer that question.

The court then allowed the jurors with questions to write them down and recessed to allow the parties to review the questions and decide if any were appropriate. Defense counsel did not object to this procedure.

Three jurors submitted questions at the end of Officer Sullivan's testimony. Juror 1 had four questions, one of which the court determined was proper ("How was the defendant addressed by the officers before he ran? By name or 'Hey You'?"). Juror 2 had three questions, one of which the court determined was proper ("Were the suspect's fingerprints on the bag?"), but was more properly answered by a different witness. Juror 3 had two ques-

tions, neither of which was found to be appropriate.

The jury was allowed back into the courtroom, and the court explained "[t]here are certain rules that permit and do not permit certain questions to be asked." The court then read Juror 1's question to the witness:

> COURT: Question: How was the defendant addressed by the officers before he ran, by name or, hey you?
>
> OFFICER SULLIVAN: By his name.

The State declined the opportunity to ask further questions, but defense counsel asked one follow-up question:

> DEFENSE COUNSEL: It was Officer Bose that yelled for Mr. Buchanan; correct?
>
> OFFICER SULLIVAN: Correct.

The court also informed Juror 2 that her question about fingerprints would be answered by another witness.[1]

Buchanan argues he was denied effective assistance of counsel and hence a fair trial, by his counsel's "acquiescing to a procedure" where jurors were allowed to submit questions to the witnesses. He contends counsel "breached an essential duty by permitting such a procedure and that procedure amounted to a structural error resulting in prejudice." Buchanan asserts he should receive a new trial.

We conduct a de novo review of ineffective assistance of counsel claims. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). In order to prevail on his claim of ineffective assistance of counsel, Buchanan must show (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Id.* Failure to prove either element by a preponderance of the evi-

---

1. The State ultimately asked Juror 2's question about fingerprints during direct examina-

tion of another witness and thus, it became unnecessary for the court to ask the question.

dence is fatal to Buchanan's claim of ineffective assistance. *State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003). If we determine the claim cannot be addressed on appeal, we must preserve it for a postconviction relief proceeding, regardless of our view of the potential viability of the claim. *State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010).

Generally, we do not resolve claims of ineffective assistance of counsel on direct appeal. *State v. Bearse*, 748 N.W.2d 211, 214 (Iowa 2008). We prefer to leave ineffective-assistance-of-counsel claims for postconviction relief proceedings. *Id.* Those proceedings allow an adequate record of the claim to be developed and the attorney charged with providing ineffective assistance may have an opportunity to respond to defendant's claims and explain his or her conduct, strategies, and tactical decisions. *Id.; State v. Biddle*, 652 N.W.2d 191, 203 (Iowa 2002).

In this case, we conclude the record is adequate to address Buchanan's claim because the hearing addressing the juror's questions was reported. *See* Iowa Code § 814.7(3). We therefore turn to the merits of the claim. *See Johnson*, 784 N.W.2d at 198 ("If the defendant requests that the court decide the claim on direct appeal, it is for the court to determine whether the record is adequate and, if so, to resolve the claim.").

A. *Breach of Essential Duty.* Buchanan argues counsel "breached an essential duty in failing to object to the practice of juror questioning." He contends "it was an argument worth making" because "the Iowa Supreme Court has never condoned the practice in criminal trials and four other states have specifically prohibited it in criminal cases." The State contends that "[g]iven the weight of authority against Buchanan's argument," his counsel "did not breach an essential duty when

declining to challenge the district court's discretion to allow jurors to submit written questions for the witnesses."

Our supreme court addressed the issue of whether jurors should be allowed to ask questions to witnesses over thirty years ago in *Rudolph v. Iowa Methodist Medical Center*, 293 N.W.2d 550, 555 (Iowa 1980). In *Rudolph*, the court approved of the practice, observing that "[i]n jurisdictions where the issue has arisen, court have generally recognized the discretion of the trial court to allow such questions." *Rudolph*, 293 N.W.2d at 555–56. As the court noted:

> We approve the practice [permitting jurors to submit questions to be asked witnesses] in principle. As finders of fact, jurors should receive reasonable help in resolving legitimate questions which trouble them but have not been answered through the interrogation of witnesses by counsel. Of course the questions must call for admissible evidence, and trial court discretion must be exercised to prevent abuse of the practice.

*Id.* at 556; *see also State v. Dixon*, 534 N.W.2d 435, 441 (Iowa 1995) (allowing judges to ask questions of witnesses).

Although *Rudolph* is a civil case (and Buchanan relies heavily on the argument that the supreme court "has never specifically approved the concept" in criminal cases), we find the supreme court's analysis and reasoning provides guidance that is helpful and applicable to the instant case. Further, as the State correctly points out, "[a]lthough *Rudolph* happens to be a civil case, nothing about the decision limits its holding only to civil cases. In fact, *Rudolph* favorably cites five criminal cases from other jurisdictions, but no civil cases."

■ The court in *Rudolph* outlined the proper procedure courts should follow in addressing juror questions:

> When jurors manifest a desire to ask questions, the court should direct that the questions be submitted to the court in writing. The court should then conduct a hearing out of the presence of the jury in which objections may be made. When the court determines that questions are proper and may be asked, the inquiry of the witness should be conducted by the court rather than by counsel, unless counsel agrees to a different procedure. Finally, counsel should have the opportunity for additional interrogation of the witness on the subject raised by the questions after the court has asked the juror's questions.

*Rudolph*, 293 N.W.2d at 556.[2]

Here, the district court correctly followed the *Rudolph* procedure. Several jurors wrote questions they wished to ask witnesses. Those questions were considered outside the presence of the jury where the court and counsel whittled the list down to two appropriate questions. When the jury returned, the court asked one of the questions deemed proper, and both attorneys were given the opportunity to question the witness further.

We also observe the district court only addressed the subject of juror questions after a juror's inquiry. The district court did not invite or initiate this participation, but rather only responded to an identified request, presumably made after a juror was left with lingering questions. Further, the court did not assume the role of an advocate or abandon its proper role in reading the juror's question.

■ Considering our supreme court's approval of the use of jury questions over thirty years ago, and the district court's careful application of the juror questioning procedure in this case, we find no breach of duty by counsel's failure to object to the issue of jury questioning. *See State v. Vance*, 790 N.W.2d 775, 785 (Iowa 2010) (noting that defendant must prove counsel "made errors so serious" that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment); *State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009) (acknowledging that we begin a presumption that counsel performed his or her duties competently). Under these facts, we do not find "counsel's performance was unreasonable, under prevailing professional norms," in failing to challenge the practice or procedure used by the district court. *See Vance*, 790 N.W.2d at 789.

■ *B. Prejudice.* Even assuming, arguendo, counsel failed to perform an essential duty, Buchanan has not proven he was prejudiced by counsel's breach. Buchanan argues counsel's alleged breach denied him "the right to a fair and impartial trial," resulting in a "structural error" where "prejudice should be assumed." In the alternative, he claims he suffered "actual prejudice" because juror questioning "changed the presentation of evidence by the State," and "reflect[ed] a change in the role of the jury" that should not be permitted. In essence, Buchanan contends the questioning interfered with the integrity of the trial process. The State counters that "Buchanan has not demonstrated prejudice from the single juror question asked of one witness, and the procedure as a whole is not structural error."

Considering the fact that Iowa, as well as the majority of other jurisdictions, allow jurors to propose questions for witnesses, we cannot say that counsel's failure to

---

2. The risks inherent in allowing juror questions and additional precautionary measures are aptly summarized in *United States v. Rawlings*, 522 F.3d 403, 408 (D.C.Cir.2008).

object rises to the level of a "complete denial of counsel" where prejudice will be presumed. *See, e.g., United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657, 668 (1984) (noting rare circumstances where the presumption of prejudice may be appropriate); *Strickland v. Washington,* 466 U.S. 668, 692–93, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 696–97 (1984) (finding that "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice"). We therefore do not agree with Buchanan that this procedure amounted to "structural error." *See State v. Feregrino,* 756 N.W.2d 700, 705–06 (Iowa 2008) (explaining that while ordinarily a defendant claiming ineffective assistance of counsel must show both a breach of duty and prejudice, in the context of deprivation of a constitutional right, the violation can amount to a structural defect in which prejudice is presumed); *Rudolph,* 293 N.W.2d at 555 (approving jury questioning in civil cases).

▇▇ We further note that Buchanan has not shown any actual prejudice. Prejudice exists when it is reasonably probable that the result of the proceeding would have been different but for counsel's alleged breach. *Dudley,* 766 N.W.2d at 620. Buchanan's argument that he was prejudiced by the State's reference to drug testing in closing arguments, after the juror question about that issue was deemed impermissible, is speculative, because Buchanan cannot prove the jury question prompted this argument for the State. And in fact, defense counsel used the unasked questions relating to drug testing to Buchanan's advantage during cross-examination, by pointing out that police had not obtained any blood or urine samples for testing.

Buchanan points to nothing in the record to support his contention that other jurors were influenced improperly by the one juror question the court read, or the second question ultimately asked by the prosecutor during direct examination, and the questions certainly did not shift the course of trial. In any event, Buchanan has not shown a reasonable probability that the questions had any effect on the outcome of trial. *See id.* Because Buchanan has failed to prove that prejudice resulted from counsel's alleged breach, his claim for ineffective assistance of counsel must fail. *See Polly,* 657 N.W.2d at 465.

### III. Evidentiary Rulings.

Buchanan next argues the district court erred when it did not permit him to make an offer of proof, and abused its discretion when it denied his motion, in regard to his request to admit testimony concerning Officer Bose's reputation and conduct. The State contends the court acted within its discretion when it chose not to admit the testimony or even allow defense counsel to make an offer of proof. The State acknowledges "it would have been better form to allow counsel to make an offer of proof," but maintains the record contains sufficient evidence for our review of the court's evidentiary ruling. The State argues offering the testimony into evidence would have been more prejudicial than probative.

Prior to trial, defense counsel filed a motion requesting admission of testimony regarding the reputation and conduct of Officer Bose, one of the arresting officers. A hearing took place on the motion on the first day of trial, at which time counsel also requested to make an offer of proof.

Defense counsel wanted to explore the circumstances concerning Officer Bose's failure to write his report until approximately one month after the incident, due

to his administrative leave of absence after the fatal shooting of a suspect in another investigation. Officer Bose was also injured in that incident. Defense counsel believed Officer Bose was under stress and scrutiny during this time period before he authored his report which may have affected his recollection of events. The State objected to the admission of such evidence, arguing there was "no relevance as far as actually getting into the shooting itself." The following colloquy ensued:

COURT: For the record, the situation that we're talking about involving Officer Steve Bose of the Waterloo Police Department and an individual by the name of Eric Rule. You, counsel, can fill in the dates because I really don't know when it was, but it was several months ago, three, four—two, three, four months ago in which Officer Steve Bose was dispatched to a domestic abuse call at the home of a certain woman. Whether Mr. Rule lived there or not, I guess, I can't say. But in any regard, Mr. Rule was romantically involved with the lady. She called, or someone called, because allegedly Mr. Rule was engaged in domestically abusing her. Officer Bose responded, and depending on whom one believes, Eric Rule, who stands at least, according to newspaper accounts, 6–4 and weighs 275 pounds and apparently has a history of assaulting people including assaulting police officers, attacked Steve Bose and in the process did what I regard as substantial damage to the officer, in that he was apparently trying to tear the officer's mouth open with his hands and did gouge at the officer's eyes doing substantial damage to the officer's eyesight. I don't know that its permanent damage, but to break free of Rule, the officer drew his weapon and fired and Mr. Rule died as a result of that. I don't see how that has any relevance to Mr. Buchan-

an's case. That there was an interval between the event allegedly involving Mr. Buchanan and the writing of the report by Officer Bose, the period of time being, what, 30 days or whatever the period of time was, I think you have every right to show that there was a difference between the event and the writing of the report and I don't know, do you have anything to indicate in the deposition that there is some discrepancy or substantial discrepancies beyond what always exists?

DEFENSE COUNSEL: Your Honor, in the deposition it came to light that in the actual complaint, which I assume was written immediately after, he had mistaken the color of a car and some other things. I would say they were probably fairly minor, Your Honor, as far as that.

COURT: What's the color of a car got to do with the events allegedly involving Mr. Buchanan?

DEFENSE COUNSEL: He states he saw him in front of a parked vehicle. He talks, actually, about two instances of vehicles being involved in this—in this arrest, and in his complaint he states that, I believe, it was a silver vehicle—at deposition—or in his report he talks about it being a blue vehicle . . .

COURT: Other than as a background, does this car, whether it be blue or silver, have anything at all do with this case?

DEFENSE COUNSEL: No, Your Honor.

COURT: So whether the light was green or the store sign was on or off, it has nothing to do with anything other than to be a minor point of difference between the complaint that the officer may or may not have filed immediately after the event and the report that was

written some month or so later. You can file a bill of exceptions, but I don't think under the circumstances ...

. . . .

We're not going to get involved in that. You have every right to show there was an event and that the report relating to that event was written some 30 or so days later, but why other than that, he was on leave and we'll just let it go at that. We're not going to get involved in the Rule shooting and the drama and emotions that that entails because it is unduly prejudicial and there is—I don't see there's any probative value. But if there is any probative value under 403 it is so minimal as to be unfairly prejudicial to the State's case. To drag in the Eric Rule shooting just for the purpose of dragging it in serves no good purpose here.

So you may file a bill of exceptions, but we're not going to do this in front of the jury or outside of the hearing of the jury in an offer of proof. You can handle the same thing by filing your bill of exceptions.

Defense counsel subsequently filed a bill of exceptions setting forth a recitation of the facts of the Eric Rule shooting and Officer Bose's resulting administrative leave. As the bill of exceptions noted, "It is the Defendant's contention that the stress that this incident caused, along with the injuries sustained could have impacted his ability to accurately remember the events that led up to Mr. Buchanan's arrest of August 30, 2009." The bill of exceptions listed the following questions counsel would have asked "had an offer of proof been allowed":

Q: You were on leave following an incident involving a shooting fatality.

Q: It is department policy to place officers involved in this type of incident on leave for a period of time.

Q: The incident is still under investigation.

Q: This incident has caused you a great amount of stress.

Q: Additionally, you sustained some significant injuries to your face and head during this incident.

Q: In fact, you were hospitalized for a period of time.

Q: You received medication while in the hospital and after leaving the hospital.

Q: In depositions it came to light that you had some problems remembering specific instances involved in this case, specifically, the color of a vehicle.

Q: In depositions you stated that you would trust your original complaint since it was written closer in time than the report you admitted you completed after returning to work.

Q: You are still not released to patrol duties.

Q: You are currently working in property.

▅▅▅▅▅ *A. Refusal to Permit Offer of Proof.* We agree with Buchanan the district court should have allowed counsel to make an offer of proof. We emphasize that a district court's refusal to allow counsel to make an offer of proof is strongly disapproved. *State v. Lange,* 531 N.W.2d 108, 114 (Iowa 1995); *State v. Harrington,* 349 N.W.2d 758, 760 (Iowa 1984).

▅▅▅▅ The purpose of an offer of proof is to give the district court a more adequate basis for its evidentiary ruling and to provide a meaningful record for appellate review. *State v. Ritchison,* 223 N.W.2d 207, 212–13 (Iowa 1974). The purposes of an offer of proof are important because they are necessary to preserve error. *See Lange,* 531 N.W.2d at 114.

The supreme court has recognized that endless or frivolous proffers can be disruptive and can interrupt the orderly process of a trial. *Id.* However, an offer of proof "should never be absolutely prohibited," and refusal to permit the making of an offer of proof is usually error. *Harrington,* 349 N.W.2d at 760. To reduce the trial's disruption, the proffer may be delayed at an appropriate recess. *Lange,* 531 N.W.2d at 114. "However, a refusal to allow an offer of proof is not *reversible* error when the reviewing court is able to determine what the contents of the offer of proof would have been." *Id.* (emphasis in original).

Further, the filing of a bill of exceptions in lieu of an offer of proof presents a great risk of reversible error. Permitting a party to file a bill of exceptions after a declination of an offer of proof leaves the sufficiency of the record to review on appeal at the whims of the attorney authorized to file the bill of exceptions. If the attorney fails to follow through and a bill of exceptions is not filed, the record may be inadequate, necessitating a new trial.

Here, because Buchanan filed a bill of exceptions we find the record is sufficient for us to understand the offer of proof. The contents of what the offer of proof would have been were adequately set forth in the bill of exceptions along with the transcript of the hearing on Buchanan's motion. *See Harrington,* 349 N.W.2d at 760 (holding that because defense counsel "explained the purpose and theory of the excluded evidence" at the hearing on his motion for a new trial, the court "can treat the record then made as the missing offer of proof"); *see also* Iowa R.Crim. P. 2.25(1) ("The purpose of a bill of exceptions is to make the proceedings or evidence appear of record which would not otherwise so appear."). We therefore turn to whether the district court abused its discretion in refusing its admission. *See, e.g., Lange,* 531 N.W.2d at 114 (finding district court committed no reversible error by failing to permit defense counsel to make offer of proof when content of offer of proof was readily apparent in the record, and proceeding to analyze the court's use of discretion in refusing to admit testimony).

**B. Evidence of Officer Bose's "reputation and conduct."** On evidentiary issues, we review for an abuse of discretion. *State v. Parker,* 747 N.W.2d 196, 203 (Iowa 2008). An abuse of discretion occurs when the district court exercises its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.*

In determining whether the challenged evidence is admissible, the district court must employ a two-step analysis. *State v. Castaneda,* 621 N.W.2d 435, 440 (Iowa 2001). The court must first decide whether the evidence is relevant. *Id.* If the court finds that the challenged evidence is relevant, the court must then decide whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice. *State v. Cromer,* 765 N.W.2d 1, 8 (Iowa 2009).

Upon our review, we find the district court exercised sound discretion in limiting the scope of Buchanan's cross-examination of Officer Bose. Although the court allowed defense counsel to cross-examine Officer Bose regarding the delay in writing his report, as well as any discrepancies in the report, the court properly denied Buchanan's request to delve into the specifics of an unrelated investigation that occurred during the time of the delay.

As the district court stated, "We're not going to get involved in the Rule shooting

and the drama and emotions that that entails because it is unduly prejudicial and there is—I don't see there's any probative value." We agree. Buchanan was charged with possession of crack cocaine with intent to deliver. Officer Bose testified at trial about his foot chase with Buchanan during which he observed Buchanan drop the bag of crack cocaine. Eliciting testimony about a completely unrelated domestic violence investigation in which Officer Bose was attacked by Eric Rule and that resulted in Officer Bose's shooting Rule would have been unfairly prejudicial to the State's case. Indeed, defense counsel agreed the reasons for requesting further questioning about the ongoing Rule investigation (and what Buchanan refers to as Officer Bose's "reputation and conduct") were "probably fairly minor" and were limited to Officer Bose's mistaking the color of a car "and some other things." Although a question to Officer Bose regarding whether he was suffering from abnormal stress while on leave may have been proper, the proposed questions listed in the bill of exceptions all related specifically to the Rule shooting fatality.

Under these circumstances, we conclude the evidence Buchanan sought to admit had little, if any, probative value. *See Castaneda*, 621 N.W.2d at 440 ("If it is not relevant, then the challenged evidence must be excluded."). In addition, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See State v. Knox*, 536 N.W.2d 735, 739 (Iowa 1995) ("Evidence is unfairly prejudicial if it may cause a jury to base its decision on something other than the established propositions in the case.").

Accordingly, we cannot say the district court abused its discretion in not admitting the evidence. We affirm Buchanan's conviction for possession of crack cocaine with intent to deliver.

**AFFIRMED.**