# IN THE COURT OF APPEALS OF IOWA

No. 22-0747
Filed August 3, 2022

**IN THE INTEREST OF J.D.,**
**Minor Child,**

**J.D., Father,**
        Appellant,

**PAUL WHITE, Guardian ad Litem,**
        Appellant.
_____


        Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

District Associate Judge.


        A father and guardian ad litem appeal a juvenile court ruling.  **AFFIRMED**

**AND REMANDED FOR FURTHER PROCEEDINGS.**


        Jamie J. Dawdy of Flanagan Law Group, PLLC, Des Moines, for appellant

father.

        Paul L. White of Des Moines Juvenile Public Defender, Des Moines,

attorney and guardian ad litem for appellant minor child.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.


        Considered by May, P.J., and Greer and Chicchelly, JJ.

**MAY, Presiding Judge.**

A father and guardian ad litem (GAL)[1] appeal following a juvenile court ruling on an Iowa Rule of Civil Procedure 1.904 motion. We affirm and remand for further proceedings.

**I. Facts and Prior Proceedings**

J.D. was born in 2017. In 2018, J.D. suffered significant brain trauma while in the care of J.D.'s mother and her paramour.[2] The juvenile court adjudicated J.D. as a child in need of assistance (CINA). J.D. was removed from the parents' care as a result.

However, the juvenile court eventually returned J.D. to the father's custody in 2019. Then in March 2021, the juvenile court terminated the mother's parental rights. Around that same time, the father filed a motion to travel with J.D. to Georgia to visit the father's mother and a school for the blind. The court granted the motion but required the father to "coordinate with the [Iowa] Department of Human Services [(DHS)] regarding the length of his stay."

But in September, the State moved for an in-person hearing. The State noted the father had failed to coordinate the length of his Georgia trip with DHS; the father and J.D. had yet to return to Iowa; and DHS had difficulty maintaining contact with the father. The court granted the motion and set the in-person hearing

---

[1] The same individual acted as the child's attorney and as GAL. For simplicity sake, we will simply refer to this individual as the GAL, though he also served as child's attorney and filed some motions on behalf of the child.

[2] J.D. was admitted to the hospital and diagnosed with cardiorespiratory failure, subdural hematoma, non-accidental traumatic injury, acute respiratory failure, acute circulatory failure, and retinal hemorrhage of both eyes. He now requires around-the-clock care.

for September 21. The father filed a motion for continuance, in which he informed the court that he and J.D. were residing in Arkansas where the father had recently found work with a lumber company. The State responded by moving to modify placement. The court granted the motion.[3] By September 26, J.D. was returned to Iowa and placed in foster care.

On October 6 and November 5, the court held a contested permanency review hearing to confirm the modification of J.D.'s placement. After the hearing, the GAL traveled to Arkansas to investigate the father's paramour's parents' (the Duvalls) home to determine if the Duvalls would be a placement option. The GAL found the home to be safe and believed the community had the necessary medical services for J.D. So on January 7, 2022, the GAL moved for placement of J.D. with the Duvalls. The State resisted the motion.

On January 28, the GAL filed a "motion for finding of lack of reasonable efforts; [and] motion for return of child to the care of his father and closure of this case." Then on January 31, the juvenile court entered the permanency review order for the October 6 and November 5, 2021 hearings. In its January 31 order, the court confirmed the modification of J.D.'s placement. However, that order did not specifically address any of the GAL's motions filed in the interim. On February 9, the father joined the GAL's "motion for finding of lack of reasonable efforts; for return of child to care of father and case closure." On February 14, the GAL filed a rule 1.904 motion to "reopen record and enlarge, amend and/or modify court's

---

[3] The father filed a notice of appeal with the Iowa Supreme Court. And the father asked the supreme court to stay J.D.'s extradition back to Iowa. The court denied this request. The father voluntarily dismissed his appeal on October 14.

order of January 31, 2022." In that motion, the GAL requested the January 31 order "be modified, enlarged or otherwise amended" and requested the court find "that there has been a lack of reasonable efforts," "that . . . this child need[s] to be returned to his father[,] and the case must close." On February 16, the State resisted the GAL's various motions.

On March 11 and 16, the juvenile court held a hearing to address the GAL's various motions. The court also intended to conduct a permanency review hearing. However, the court ended up rescheduling the permanency review portion; so, the court only addressed the GAL's motions.[4] When the GAL attempted to introduce witness testimony, the court informed the GAL that it was not reopening the record.[5] So instead, the GAL submitted offers of proof in the form of testimony from the father's prior attorney, Mr. Duvall, the DHS caseworker, and the father. Again, the GAL and father asked the court to find that DHS had not made reasonable efforts toward reunification and asked that J.D. be returned to the father and the case be closed.

In an April 18 ruling, the court determined it would not use any of the information presented in the offers of proof when addressing the pending motions. The court decided it could not reach a determination as to whether DHS made reasonable efforts because the State did not have an opportunity to refute the

---

[4] Those motions included the January 28 motions for a finding of lack of reasonable efforts and to return the child to the father for closure of the case and the February 14 motion to reopen the record and enlarge, amend, or modify the January 31 order.

[5] The State offered, and the court admitted, several exhibits at the beginning of the hearing. However, it appears they were admitted when the parties were still anticipating the court would also hold a permanency review hearing at the same time.

claims made by the father and GAL and concluded "[a]nother hearing needs to be held in order to properly develop the record." With respect to the motion to reconsider, enlarge, or amend, the court found the GAL and father were merely attempting to rehash issues; so the court did not need to expand its ruling. And the court denied the motion to return the child to the father and close the case because J.D. remained a CINA.

The father and GAL now appeal.

## II. Standard of Review

"We review CINA proceedings de novo. In reviewing the proceedings, we are not bound by the juvenile court's fact findings; however, we do give them weight." *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014) (internal citation omitted).

## III. Discussion

At the outset, we must consider what evidence we have to review on appeal. In their combined certificates, the GAL and father only ordered the transcripts for the March 11 and 16, 2022 hearings. Those hearings only include the offers of proof. And—on appeal—neither the GAL nor the father claim that the juvenile court erred in refusing to reopen the record to admit the additional testimony included in the offers of proof. So we do not believe those offers of proof serve as evidence on which we may rely at this point.[6] *Cf. State v. Buchman*, 800 N.W.2d 743, 752 (Iowa Ct. App. 2011) ("The purpose of an offer of proof is to give the district court a more adequate basis for its evidentiary ruling and to provide a meaningful record for appellate review [of the evidentiary ruling]."). And because

---

[6] Both the GAL and father cite to the transcripts of the offers of proof throughout their petitions on appeal as though they are properly admitted testimony.

the parties did not order the transcripts from the October 5 and November 6, 2021 hearings—i.e., the hearings that provided the evidentiary foundation for the January 31, 2022 order—we do not have those to review either. So our ability to exercise our appellate review is significantly hampered.

With that, we turn to the GAL's and the father's claims on appeal.

First, the GAL claims the DHS failed to make reasonable efforts toward reunification.[7] But we note the juvenile court did not reach a final ruling as to this issue. Rather, the court decided it would only reach a determination once both sides could present evidence as to the efforts provided or withheld. This seems like the best course of action—and, in any event, we do not have a final ruling to review. So we remand this issue to the juvenile court to make a determination as to whether the efforts expended by DHS in this case were reasonable.

Second, both the father and the GAL argue the juvenile court should have returned J.D. to the father and closed the case.[8] But based on the record before us, we agree with the juvenile court that J.D. could not be safely returned to the father and, therefore, the case could not be closed. The father and GAL argue the father should not be penalized for moving out of state with J.D. because (1) those involved in this case knew of his intention to do so eventually and (2) the court

---

[7] To the extent the GAL challenges the juvenile court's January 31, 2022 reasonable efforts determination relating to the September 2021 removal, we do not have the necessary record to conduct an appellate review. *See* Iowa R. App. P. 6.803(1) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to such finding or conclusion.").

[8] From their briefs, it appears that they both are appealing from the juvenile court's ruling on their motions to return the child and close the case rather than from the court's ruling confirming the modification of J.D.'s placement.

gave the father permission to travel out of state with the child. But the court gave permission for travel with the understanding that (1) the father was going on a fact-finding mission of sorts to figure out what resources might be available in Georgia and (2) the father and J.D. would return to Iowa and remain under the guidance and supervision of DHS as he planned his next steps in concert with DHS. That is a far cry from what actually happened. Instead, the father greatly reduced contact with DHS and permanently moved with J.D. to Arkansas. And the record contains no Interstate Compact on the Placement of Children home study to confirm the father's new residence in Arkansas is safe for J.D. given his unique medical needs. *See* Iowa Code § 232.158(3)(d) (2022) ("The child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child."). Moreover, the juvenile court's January 31 order states that, following removal from his father's care, J.D. returned to Iowa "filthy." "[H]is hands were stiff and thumbs were immobile," his "lower teeth were gray," and he "was so constipated his bowels were impacted and he was screaming and crying in pain."[9] We will not return a child to live in such conditions—and this record does not allow us to find the child's condition would be different if returned to the

---

[9] To the extent the father and GAL contest these factual findings, they have precluded us from reviewing them by not providing us the full record on appeal. *See* Iowa R. App. P. 6.803(1); *In re F.W.S.*, 698 N.W.2d 134, 135–36 (Iowa 2005) ("It is the appellant's duty to provide a record on appeal affirmatively disclosing the alleged error relied upon. The court may not speculate as to what took place or predicate error on such speculation. Without the benefit of a full record of the lower courts' proceedings, it is improvident for us to exercise appellate review." (internal citation omitted)).

father's care.  So we agree with the juvenile court's refusal to return J.D. to the father and close the CINA case.

**AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS.**